Pages A000147 thru A000152

CONFIDENTIAL MEDICAL RECORDS

```
                    SUPERIOR COURT CRIMINAL DOCKET                    Page    1
                         ( as of  03/07/2005 )

State of Delaware v.  JERMAINE WILSON
State's Atty: VALERIE A FARNAN , Esq.                       DOB: 01/15/1985
Defense Atty: BRIAN J BARTLEY , Esq.     AKA: JERMAINE L WILSON
                                              JERMAINE L WILSON

Co-Defendants:  ERIC HILL , CHRISTINE CHERRY

Assigned Judge:
```

Charges:

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|-------------|-------------|--------|-------------|
| 001 | 0212001901 | IN03011923 | ROBBERY 1ST | PG | 04/07/2003 |
| 002 | 0212001901 | N03011924 | AGGR MENACING | NOLP | 04/07/2003 |
| 003 | 0212001901 | IN03011925 | CONSP 2ND | NOLP | 04/07/2003 |
| 004 | 0212001901 | IN03011926 | ATT ROBBERY 1ST | NOLP | 04/07/2003 |
| 005 | 0212001901 | IN03011927 | ATT ROBBERY 1ST | NOLP | 04/07/2003 |
| 006 | 0212001901 | N03011928 | AGGR MENACING | NOLP | 04/07/2003 |
| 007 | 0212001901 | N03011929 | AGGR MENACING | NOLP | 04/07/2003 |
| 008 | 0212001901 | IN03011930 | CONSP 2ND | PG | 04/07/2003 |
|  | 0212001901 | VN0301193001 | VIOL O/PROBATN | VWDN | 02/10/2005 |
| 009 | 0212001901 | IN03011931 | CONSP 2ND | PG | 04/07/2003 |

```
     Event
No.  Date        Event                                    Judge
----------------------------------------------------------------------------
     01/08/2003
       MOTION FOR REDUCTION OF BAIL FILED.
       BY BRIAN BARTLEY, ESQ.
       SCHEDULED FOR 2/11/03 AT 9:30.
1    01/27/2003
       INDICTMENT, TRUE BILL FILED, NO 1
       SCHEDULED FOR CASE REVIEW AND ARRAIGNMENT 03/10/03 AT 9:00
     02/06/2003
       CASE ACCEPTED IN SUPERIOR COURT.
       ARREST DATE: 12/04/2002
       PRELIMINARY HEARING DATE: WAIVED 01/23/03
       BAIL:  SECURED BAIL-HELD
4    02/11/2003                                      108,000.00
       MOTION FOR REDUCTION OF BAIL DENIED.   REYNOLDS MICHAEL P.
       PRETRIAL SUPERVISION - HOME CONFINEMENT
       NO CONTACT W/VICTIMS
5    02/20/2003
       SUMMONS MAILED
     03/10/2003                                      COOCH RICHARD R
       CASE REVIEW & ARRAIGNMENT CALENDAR: SET FOR FINAL CASE REVIEW
       DATE: 4/7/03 @ 9:00
6    03/21/2003
       NOTICE OF SERVICE - DISCOVERY REQUEST.
```

**WILSON0042**

**A000153**

```
                    SUPERIOR COURT CRIMINAL DOCKET
                       ( as of  03/07/2005 )                    Page    2

State of Delaware v.  JERMAINE WILSON
State's Atty: VALERIE A FARNAN , Esq.                       DOB: 01/15/1985
Defense Atty: BRIAN J BARTLEY , Esq.      AKA: JERMAINE L WILSON
                                               JERMAINE L WILSON

         Event
No.      Date            Event
                                                          Judge
------------------------------------------------------------------------
        FROM THE PUBLIC DEFENDER'S OFFICE.
7     04/10/2003
        MOTION TO TRANSFER DETENTION OF DEFENDANT FROM
        NEW CASTLE COUNTY DETENTION CENTER TO GANDER HILL.
        (CHRISTINA SHOWALTER, DAG).
8     04/15/2003
        MOTION FOR TRANSFER GRANTED. DEFENDANT TO BE TRANSFERRED FROM
        NEW CASTLE COUNTY DETENTION CENTER TO GANDER HILL.
9     05/23/2003
        SENTENCING CALENDAR - CONTINUED.     COOCH RICHARD R.
      05/27/2003                          DEFENSE REQUEST - ATTY. N/A
        EMAIL FILED TO: JUDGE COOCH, FROM BRIAN BARTLEY, ESQ.
        RE: ASKING THAT SENTENCING FOR THIS MATTER BE CONTINUED FROM TODAY TO
        A LATER DATE. I WILL BE UNAVAILABLE FOR THIS MATTER.
11    05/27/2003
        EMAIL FILED TO: BRIAN BARTLEY, ESQ.      FROM : JUDGE COOCH.
        RE: AS LONG AS THE STATE DOES NOT OPPOSE THE RESCHEDULING OF THIS
        MATTER IT WILL BE CONTINUED.
12    05/27/2003
        EMAIL FILED TO: JUDGE COOH AND BRIAN BARTLEY. FROM : VALERIE FARNAN
        RE: THE STATE DOES NOT OPPOSE TO THE RESCHEDULING.
3     06/20/2003
        SENTENCING CALENDAR: DEFENDANT SENTENCED.     COOCH RICHARD R.
14    06/20/2003
        SENTENCE:  ASOP ORDER SIGNED AND FILED 7/9/03.   COOCH RICHARD R.
15    02/01/2005
        ADMINISTRATIVE WARRANT FILED - LEVEL (4).    REYNOLDS MICHAEL P.
        PROBATION OFFICER: MIKE RECORDS
        BAIL HEARING HELD THIS DATE AND BAIL SET ON VOPS AS FOLLOWS:
        BAIL SET:  HELD WITHOUT BAIL                     0.00
        VOP: 2/10/05 AT 9:00 BEFORE J. COOCH
      02/10/2005
        VIOLATION-OF-PROBATION HEARING:  VIOLATION WITHDRAWN BY PROBATION
        OFFICER.                                    COOCH RICHARD R.
16    02/10/2005
        VIOLATION OF PROBATION ASOP SENTENCE ORDER SIGNED AND FILED 02/14/05.
                                                    COOCH RICHARD R.

              *** END OF DOCKET LISTING AS OF  03/07/2005 ***
                  PRINTED BY: CSCVMOA
```

WILSON0043

DOC
BP
PP
PSI

CF

*Gander Hill*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE

vs.

JERMAINE WILSON

Alias: NO ALIASES

DOB: 01/15/1985
SBI: 00456612

CASE NUMBER:                     CRIMINAL ACTION NUMBER:
0212001901                          IN03-01-1923
                                    ROBBERY 1ST(F)
                                    IN03-01-1930
                                    CONSP 2ND(F)
                                    IN03-01-1931
                                    CONSP 2ND(F)

### SENTENCE ORDER

NOW THIS 20TH DAY OF JUNE, 2003, IT IS THE ORDER OF THE
COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
statutory surcharges.


  AS TO IN03-01-1923- : TIS
  ROBBERY 1ST

  The defendant is to pay a fine in the amount of $500.00 of
which $400.00  is suspended (see attachment).

**Effective December  4, 2002  the defendant is sentenced
as follows:**

  - The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5


 This is a mandatory sentence pursuant to DE11083200A1FB .


  AS TO IN03-01-1930- : TIS
  CONSP 2ND

  - The defendant is placed in the custody of the Department
of Correction for 1 year(s) at supervision level 5

**APPROVED ORDER**    1    July  8, 2003 10:07

D00213

STATE OF DELAWARE
        VS.
JERMAINE WILSON
DOB: 01/15/1985
SBI: 00456612

- Suspended for 1 year(s) at supervision  level 4
PLUMMER CENTER

- Suspended after serving 6 month(s)  at supervision level
4 PLUMMER CENTER

- Suspended for 6 month(s)  at supervision  level 3

- Hold at supervision level 5

- Until space is available at supervision level 4
PLUMMER CENTER

Probation is consecutive to any probation now serving

AS TO IN03-01-1931- : TIS
CONSP 2ND

The defendant shall pay his/her restitution as follows:
See attached list of Payees.

- The defendant is placed in the custody of the Department
of Correction for 18 month(s) at supervision level 5

- Suspended immediately

- For 18 month(s)  supervision level 2

Probation is consecutive to criminal action number
03-01-1930

**APPROVED ORDER**      2     July  8, 2003 10:07

D00214

SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
      VS.
JERMAINE WILSON
DOB: 01/15/1985
SBI: 00456612

CASE NUMBER:
0212001901

The defendant shall pay any monetary assessments ordered during the period of probation pursuant to a schedule of payments which the probation officer will establish.

Defendant shall be evaluated for substance abuse and follow recommendation for treatment, counseling and screening.

Obtain and remain gainfully employed.

Have no contact with Joie Hamilton

Have no contact with Diana Stambaugh

Have no contact with Brian Stambaugh

**NOTES**

_signature_
JUDGE RICHARD R COOCH

**APPROVED ORDER**    3    July 8, 2003 10:07

D00215

A000157

## FINANCIAL SUMMARY

STATE OF DELAWARE
      VS.
JERMAINE WILSON
DOB: 01/15/1985
SBI: 00456612

                           CASE NUMBER:
                           0212001901

SENTENCE CONTINUED:

| | |
|---|---:|
| TOTAL DRUG DIVERSION FEE ORDERED | |
| TOTAL CIVIL PENALTY ORDERED | |
| TOTAL DRUG REHAB. TREAT. ED. ORDERED | |
| TOTAL EXTRADITION ORDERED | |
| TOTAL FINE AMOUNT ORDERED | 100.00 |
| FORENSIC FINE ORDERED | |
| RESTITUTION ORDERED | 1721.84 |
| SHERIFF, NCCO ORDERED | |
| SHERIFF, KENT ORDERED | |
| SHERIFF, SUSSEX ORDERED | |
| PUBLIC DEF, FEE ORDERED | 50.00 |
| PROSECUTION FEE ORDERED | 100.00 |
| VICTIM'S COM ORDERED | 90.00 |
| VIDEOPHONE FEE ORDERED | 3.00 |
| **TOTAL** | **2,064.84** |

**APPROVED ORDER**    4    July  8, 2003 10:07

D00216

A000158

SURCHARGES

STATE OF DELAWARE
       VS.
JERMAINE WILSON
DOB: 01/15/1985
SBI: 00456612

CASE NUMBER:
    0212001901

| CRIM ACTION # | DESCRIPTION | AMOUNT |
|---|---|---|
| IN03-01-1923 | VCF | 90.00 |

**APPROVED ORDER**    5    July 8, 2003 10:07

D00217

A000159

<u>RESTITUTION SUMMARY</u>

STATE OF DELAWARE
           VS.
JERMAINE WILSON
DOB: 01/15/1985
SBI: 00456612

                            CASE NUMBER:
                              0212001901


    AS TO IN03-01-1931 :
         $         586.00 to DIANA  STAMBAUGH
         $        1135.84 to STATE FARM INSURANCE


**APPROVED ORDER**      6     July  8, 2003 10:07

D00218

A000160

Pages A000161 thru A000165

CONFIDENTIAL MEDICAL RECORDS

# CVOP DATA FORM

PROGRAM _____

NAME: _Wilson_     _Jermaine_ _____
Last            First            M.I.            Suffix

OFFENSE: _____

DATE REC: _9-23-04_   ☐ INSTITUTION _____

☑ LV 4        ☐ LV 5        ☐ LV 5 With LV 4 to follow

☐ CREST      ☑ W/R        ☐ WORKER     ☐ HOME CONF

☐ KEY GRAD   ☐ OTHER TRT  ☐ CREST RELAPS  ☐ COMP TRT DATE _____

DOB: _1-15-85_  AGE: _19_  SBI: _456612_ ____  Place of Birth _DE_

SEX: _M_    RACE: _B_   SKIN TN: _____

HGT: _5_ ' _11_ "   WT: _196_ lbs.   EYE: _Bru_   HAIR: _Blk_

SSN#: ███████████████   DR LIC #/ STATE: _____ /____

SCARS/MARKS/TATTOOS: _None_ _____

_____

AKA: _____

**Where you will be living is your Host**

HOST NAME: _____, RELATIONSHIP: _____

ADDRESS: _____
Number          Street            Apt #

_____
Development/Apartment Complex       City       Zip

PHONE: _____  ALTERNATE PHONE: _____

**EMERGENCY CONTACT (Other than address listed above)**

NAME: _Susie Wilson_ _____  RELATIONSHIP: _Mother_

ADDRESS: _22 B2 Geneva Ct_ _____  PHONE #: _302-282-0757_

CITY / ST / ZIP: _Newark, De_ _____

FORM# 906

D00237

A000166

## CENTRAL VIOLATION OF PROBATION
### Resident signature form

I, _Wilson, Jermaine_ , having received a copy of the Central
(Print name)
Violation of Probation (CVOP) Orientation Manual and having had the rules and
procedures explained to me, agree to abide by them.

The Delaware Department of Correction has established a Co-pay system. First
Correctional Medical is the current contracted medical provider for Dept. of Correction.
Offenders who initiate a medical request will be required to pay a fee established in the
Dept. of Correction policy. You will also be charged a fee for Over the Counter (OTC)
Medications. Staff initiated requests waive the Co-pay portion of a sick-call visit. Staff will
only contact FCM in situations involving medical emergencies. DO NOT ask DOC staff to
contact FCM staff for non-emergency visits. You should also know that CVOP is not
responsible for any medical or dental expenses incurred by residents in any Level IV
program unless the following procedure is followed:

1. If an emergency medical need occur while on CVOP property, immediately
   contact a staff member in the Duty Office. FCM will then be immediately
   notified by staff of the CVOP to solicit appropriate action.

2. If an emergency medical need occurs while away from the CVOP, immediately
   call the CVOP at 659-6100 and inform staff of the problem. DOC staff will
   contact medical and/or give directives. Each case will be evaluated by case by
   case basis concerning cost of DOC/FCM. Decisions made by FCM are final.

I understand that I am responsible to pay court fines and/or court costs and restitution
which have been levied against me by a court. This will be done through an intercept
program designated by the State.

I understand I am not allowed to possess, or have on my person, any monies at any time
while at the CVOP and/or Crest Central. If I am found to possess any monies, I will receive
a program violation. If I am found guilty by the MDT Board, the money may be forfeited as
contraband to the States General Fund.

_Jermaine Wilson_                                    _9/23/04_
Resident's Signature                                Date

_[signature]_                                       _9/23/04_
Witness Signature                                   Date

FORM #904

D00238

# CENTRAL VIOLATION OF PROBATION

## OFFENDER ORIENTATION SIGNATURE FORM

I _Wilson, Jermaine_ (print name) the undersigned have received a copy of and read the Offender Orientation Manual of the Central Violation of Probation Center. I understand that I am required to comply with the rules and regulations set forth therein, and furthermore, I understand that the following Conditions of Supervision are applicable to my stay at this facility.

### CONDITIONS OF SUPERVISION

**CONDITION #1:** You shall not commit and/or be convicted of any criminal offense(s) during the supervision period. This includes the charges of Escape After Conviction, Escape 3rd, and Motor Vehicle offenses.

**CONDITION #2:** You must be employed, enrolled in school training, community service, treatment programs or other productive activity which exceeds fifteen (15) hours a week.

**CONDITION #3:** You must abide by all the rules and regulations of the Central Violation of Probation Center and/or the Residential Treatment Program as described in the orientation manual.

**CONDITION #4:** You will follow any special rules/conditions imposed at anytime by the Court, Parole Board, Department of Correction, Halfway House Staff and the Residential Treatment Program.

**CONDITION #5:** You are not to possess or consume alcoholic beverages, controlled substances and/or other dangerous drugs unless they are legally prescribed and authorized. You are subject to random and/or frequent drug/alcohol testing.

OFFENDER SIGNATURE: _Jermaine Wilson_ DATE: _____

WITNESS SIGNATURE: _____ DATE: _4/23/04_

**FORM #905**

D00239



# STATE OF DELAWARE

## DEPARTMENT OF CORRECTION
## BUREAU OF COMMUNITY CORRECTIONS

# OFFENDER ORIENTATION MANUAL

CENTRAL VIOLATION OF PROBATION CENTER
P.O. BOX 5003
SMYRNA, DE 19977
PHONE # (302) 659-6100



EFFECTIVE 6/30/03
UPDATED 6/30/03

D00340

1

# TABLE OF CONTENTS

A. INTRODUCTION — PAGE 2
B. PERSONAL PROPERTY — PAGE 3
C. ALLOWABLE ITEMS — PAGE 3
D. HOUSING POD RULES — PAGE 4
E. OFFENDER DRESS CODE — PAGE 4
F. MAIL SERVICE — PAGE 5
G. CHOW HALL PROCEDURES — PAGE 5
H. MEDICAL SERVICE — PAGE 6
I. COUNT PROCEDURES — PAGE 6
J. FREE ISSUE — PAGE 6
K. LAUNDRY — PAGE 7
L. VISITS — PAGE 7
M. REQUESTS — PAGE 8
N. OFFENDER ACCOUNTS — PAGE 8
O. MDT(Classification) — PAGE 8
P. MDT(Discipline) — PAGE 9

# A. INTRODUCTION

1. Welcome to the Central Violation Of Probation unit, which is commonly referred to as CVOP. This offender orientation manual is provided to assist you in becoming familiar with the established policies and procedures of this facility.

2. You are responsible to follow the procedures and rules, which are contained in this manual. You will be asked to sign a form which states you have received a copy of this manual and understand that you are responsible to follow it's contents.

3. EVERYONE is required to participate in available work programs as needed. This includes community work projects under staff supervision. In addition, those designated to participate in treatment related programs within this facility are required to comply with the schedule, structure, and rules of the program to which they have been assigned. THE MANNER IN WHICH YOU CONDUCT YOURSELF, YOUR OVERALL ATTITUDE BEHAVIOR AND COMPLIANCE WITH THE RULES AND WITH STAFF DIRECTION WILL DETERMINE HOW YOU PROGRESS AT THIS FACILITY. Refusal, behavior, non-compliance with policies and procedures, and refusal to accept work or treatment programs will be reasonable and proper justification for Staff to recommend your transfer to a higher security level. Violent behavior, threats of violence, and disorderly behavior will not be tolerated. Depending on your specific circumstances, this may mean that you will serve your ENTIRE sentence inside an institution.

5. Offenders who are at CVOP are NOT automatically eligible for programs such as Supervised Custody or Work Release. Individuals must earn what they ultimately receive.

6. If you do not understand any portion of this manual, or have difficulty reading it, contact any on-duty staff member so that your questions may be answered properly.

7. All residents will address staff by the appropriate rank and last name when they desire to speak to a staff member. You may also use Mr. Mrs. Miss. Etc. and the persons last name if you do not know their rank. The use of first names or nicknames when addressing staff is not permitted. When you have a question or a request of a staff member, you are required to speak to the Officer working in your area FIRST. Questions or concerns that are not emergencies will not be considered during count or chow.

8. You are not permitted to approach the building Sergeant or Shift Commander unless you are directed to do so by staff. If you disagree with the Officer working in your area, and wish to speak to someone else, you must request in writing to speak to the Shift Commander and include the nature of the problem. The Shift Commander will determine if your request is reasonable.

9. Residents are required to comply with orders or instructions given by staff at all times.

10. You are expected to take reasonable care of this manual, and return it when you are released or transferred from this facility so that it may be reissued.

# B. **PERSONAL PROPERTY**

1. **No personal property** shall be permitted beyond the intake area with exception of the items listed in ALLOWED PERSONAL ITEMS below.
2. If you want all your property being stored sent out, a form may be obtained from any on-duty staff, which you may use to designate the person(s) whom you wish us to release your property to. If no one claims your property within 30 days of your departure from this facility, the property will be disposed of, or donated. Your property may be picked up from the facility during visiting times, or between the hours of 9AM and 3PM Monday through Friday, or as authorized by the Shift Commander.

# C. **ALLOWABLE ITEMS**

1. The following are allowed to be in your possession during your stay at CVOP. Note that there are limits to the amount of each item allowed. Items not listed below, or quantities in excess of the allowed amounts are considered contraband and will be confiscated or disposed of, and may result in disciplinary action.
2. **Allowed personal items are as follows:**
   - a) One plain wedding band
   - b) One religious symbol on a necklace
     ( 1/8 inch thick rope or less, less than 2 inch symbol)
   - c) One religious book
   - d) One Kufi and prayer rug (Muslim faith only)
   - e) Personal mail (reasonable amount)
   - f) Two personal deodorants (no roll on or aerosol)
   - g) Three bars of soap
   - h) One toothbrush
   - I) Two tubes of toothpaste
   - j) Three personal books and three magazines
   - k) Photographs (reasonable amount)

   Also items deemed needed for medical care or disabilities such as dentures, hearing aids, prosthetic limbs, etc.
3. **Allowed state issued items are as follows**
   - a) Two CVOP pants
   - b) Two CVOP shirts
   - c) One pair of work boots
   - d) One pair of sneakers
   - e) One pair of shower shoes
   - f) One mattress and pillow
   - g) Three T-shirts
   - h) Three pair of socks
   - i) Three pair of underwear
   - j) Two sheets and One pillowcase
   - k) One blanket (Two during winter months only)
   - l) Two laundry bags
   - m) Two pair of thermal underwear tops and bottoms (winter months only)
   - n) 'Free issue' supplies (no more than two weeks issue) **ONLY ONE DISPOSABLE RAZOR**
   - o) One Styrofoam cup for drinking water
4. You are expected to take reasonable care of the items issued to you until they are returned. If you are found guilty of altering or destruction of State property you may be held responsible for the cost of its replacement. Items that are no longer useful must be turned in for replacement; this includes shoes, razors, underclothes, and all other items.
5. Offenders assigned to regular work details (such as Road Crew, Highway, Kitchen) shall be permitted to have extra laundry items due to the nature of their assignments. Workers will be issued an extra two each of the following; underwear, socks, t-shirts.

D00342

3

# D. HOUSING POD RULES

1. This is a quiet building. Shouting and loud talking are not permitted. There will be no talking in the hallways, chow hall, medical, or other areas other than your assigned pod unless permitted by staff. You are living close to others and your conduct must be such that you do not cause other offenders discomfort or bother them in any way. The use of profanity in speech or gestures is prohibited. Horseplay will not be tolerated at any time.

2. Telephones are located on your pod for your use when not involved in other activities. Generally the phones will be available between 8:30am and 9pm daily unless extended or restricted by staff on duty. Collect calls only, no calling cards or using staff phones will be allowed. Calls of a legal nature may be made without using the collect calling method, as explained below. Requests for legal calls must include the name and phone # of who you wish to contact, the date you wish to call, and the reason you request to use the phone. Requests for legal calls must be submitted to the wing officer by 9 am for consideration. Phones are off limits during count, chow and any other time as directed by staff.

3. Televisions are provided on each housing pod. Television may normally be viewed between 6am and 9pm, except for count time, and meal times at which time they must be turned off. Staff may extend or restrict the use of the televisions as needed. Television volume will be at the level where it does not interfere with institutional operations or other facility operations.

4. Adequate shower facilities are in each housing pod to enable each resident to bathe daily. Each resident is expected to shower at least twice per week. Showers may be taken during the day between 830am through 9pm providing that you are complete and properly dressed before count times and meal times.

5. Everyone is required to get up and get fully dressed as soon as wake up call is announced at 5am. Your bed must be made once you are dressed properly. In UNUSUAL circumstances such as a verified written medical excuse, the Shift Commander has the authority to permit an individual to remain in bed.

6. Beds will be made as follows. The first sheet must fully cover the mattress and be neatly tucked in under the mattress on all sides and ends. The second sheet is to be placed the full length of the mattress on top of the first sheet with one seam even with the head of the mattress. The second sheet must be neatly tucked into the foot end and in all sides of the mattress. The blanket is to be placed in the same manner on top of the second sheet. If a second blanket is used it will be folded neatly and placed across the foot end of the bed. The pillow, properly covered by the pillowcase, will be placed neatly across the head end of the mattress.

7. Once the bed is made, YOU WILL NOT BE PERMITTED TO GET UNDER THE SHEETS OR BLANKETS UNTIL DESIGNATED BED TIMES. You may lie on top of the fully made bed, if you wish, during periods of inactivity, however you will not be permitted to cover up with any object such as towel, sheet, etc.

8. All issued clothing must be stored in the drawer provided under your assigned bunk. Dirty laundry may be stored under the bunk, against the wall in the issued laundry bag. All footwear will be stored neatly under the foot end of the bunks when not being used. Residents are prohibited from hanging pictures, clothing and any other objects from the walls, bunks etc. The crossbar at the foot of each bed may be used to hang wet towels and washcloths only while they dry. Any item found out of its designated area will be confiscated and not returned.

9. It is the responsibility of residents to keep their immediate area clean and ready for inspection at all times. Common areas such as bathrooms, sinks, floors, and windows must be maintained at all times. These common areas are the responsibility of each offender assigned to the housing pod. Cleaning supplies may be issued by the Officer upon request; however, cleaning supplies shall be returned to the Officer immediately after use.

10. Snacks issued on the pod must be consumed or disposed of by 9pm each evening.

11. All chairs will be stacked neatly in the front of the pods at 9pm ( Lights out).

12. Offenders will not be permitted to pass items to other offenders housed on separate pods.

# E. OFFENDER DRESS CODE

1. All residents will wear their uniforms between wakeup call 5am and lights out at 9pm as specified below.

000343

4

**A000172**

2. Shoes will be worn at all times you depart your housing area. You must keep your shoes tied properly when not in your housing area.
3. CVOP pants will be worn up at waistline as they are designed to be worn. The pant legs will be worn at a length below the ankle, but above floor level, as they are designed to be worn. Pant legs may be rolled up as necessary to prevent them from dragging on the ground, however, they may NOT be rolled tightly against the ankle or bloused.
4. CVOP shirts will not be tucked into the pants. Sleeves will not be rolled up. T-shirts will always be worn tucked into the pants without overlapping the waistband of the pants. Sweatshirts or long underwear may be used in addition to the outer CVOP shirt during cold weather; however, when sweatshirts or thermal underwear are used they must be worn under the CVOP shirt and be tucked into the CVOP pants.
5. Offenders are not permitted to rest their hands inside their pants except when using the restroom.
6. No head gear of any kind is permitted to be worn at anytime inside the Bldg and or housing pods except approved Kufi.

# F. MAIL SERVICE

1. U.S. mail service is provided at CVOP. Envelopes and paper will be issued weekly for your use. Mailboxes are located in the hallway to your right as you go to the dining hall for U.S. and in house mail. You can place your mail of any type in the appropriate box on your way to the dining hall for meals. Do not ask staff to handle your mail, it is your responsibility.
2. Mail is collected from the boxes each evening for processing, and then is taken to the post office the following day. You must place your mail in the outgoing box no later than the evening meal for it to be mailed the next day.
3. Correspondence between residents incarcerated in the same or different facilities is not permitted without written permission from the Warden.
4. Postage will be provided for your outgoing mail from CVOP equal to the amount of envelopes you are issued weekly during 'free issue'. Postage stamps will not be permitted in your possession at any time. You are not permitted to have postage stamps sent to you while you reside at CVOP.
5. Catalogues are not permitted; magazines and books are limited to three each in your possession.
6. Any item, which requires more than one postage stamp to be mailed, such as a package, will be the financial responsibility of the offender. The security staff will also inspect the package before being sealed. The Pay-To policy will be used to pay for postage for which the offender is responsible.
7. Photographs may be mailed to you provided that there is no nudity or revealing pictures. There are also limits set in the authorized property, which state the amount in your possession must be reasonable.
8. Mail will be issued to you during mail call between 6pm and 9pm Monday through Saturday except holidays observed by the US Postal Service. During mail call all other activities will cease, televisions will be turned off, and quiet will be maintained on the pod until the Officer completes mail call. When the mail call is announced on your pod you must report to your bunk and remain there unless called to retrieve mail or until the mail call is finished.
9. All incoming mail is sorted, opened and checked for contraband. We will not accept any checks, cash, or money orders at this facility.
10. Incoming legal mail will be presented to the offender while still sealed. The offender will be required to open the mail in the presence of a security staff member, and then staff will check the correspondence for contraband.

# G. CHOW HALL PROCEDURES

1. Meals will be provided three times daily. Meal times will begin approximately as follows: Breakfast {5:15am – 5:30am} Lunch {11:15 – 11:30pm} Dinner {4:15 – 4:30pm} All residents are required to report to the dining area with their pod even if they do not plan to eat. No one will be permitted to remain on the pod during meal times.
2. When your pod is called for chow, all residents will stand at the foot of their assigned bunk and wait for staff to escort them to the dining hall. When the escorting staff member gives the command to 'roll out', the residents will exit the pod in an orderly fashion, staying in a straight line to the right side of the hallway. There will be no talking or noise making of any kind to, from, or within the dining hall from any resident.
3. You must take the first tray to your right as you enter the chow hall. Each food tray shall contain the same items. There will be no substitutes, additions, or deletions for you. There will be no talking or communication with those

D00344

serving the food. If you have specific dietary requirements you are required to get written approval through the medical contractor.

4. Sharing or trading of food may take place with those seated next to you; however, there will be no talking permitted. You may not pass anything to tables in front or behind you, and passing of any item while in the serving line or on your way to your seat is prohibited.

5. **It is your responsibility to get what you need from the food line, such as utensils, napkins, juice, etc. – once you leave the line do not ask to return to get something you forgot.** Once you have received your tray and your one-cup of juice, and/or one cup of coffee, and/or one cup of water (**NO REFILLS**) you will report directly to the table as directed by staff. Once seated you will receive a reasonable amount of time to eat.

6. Once a table is finished eating, or the time limit has expired, staff will announce to a specific numbered table 'Trays'. At that time the table called for will get up with their trays and any trash, push their chairs in, and proceed to their left. The trash area is located by the dining hall exit where you will remove any trash or food remaining into the trash cans provided, and place your trays, utensils, bowls, etc. in the designated area. **No food is permitted to leave the dining hall except snacks that are issued during the evening meal.**

7. After discarding of trash and trays, residents will proceed back to their housing pod in a straight line along the right side of the hallway. Residents are to remain in a straight line at their pod door until staff opens the door for them.

## H. <u>MEDICAL</u>

1. The Department of Correction employs a medical contractor who is responsible to provide medical care. Nurse and Doctor visits to this facility, including the frequency and purpose of such visits, are scheduled through the medical contractor.

2. Any offender having the need to be seen by medical staff <u>**must fill out a request to be seen and include the reason for such a request.**</u> All such requests should be made using the 'sick call' sheets located in the hallway by the medical window. Once the form is completed it should be placed in the box labeled 'sick call' which also is located in the hallway next to the medical window.

3. Valid medical EMERGENCIES should be brought to the attention of staff immediately. DO NOT ask staff to contact CMS for non-emergency visits.

4. Any medication in your possession must be clearly labeled and be used as instructed. Any expired medication must be returned to medical immediately. Possession of expired medication, or medication not labeled properly will be considered just cause for disciplinary action.

5. You may only enter the medical office when directed to do so by staff. You may not stop when passing by to ask medical staff questions.

6. The Delaware Department of Correction has established a Co-pay system. Correctional Medical Services is the current contracted medical provider for Dept. of Correction. Offenders who initiate a medical request will be required to pay a fee for Over the Counter (O.T.C.) Medications. Staff initiated requests waive the Co-pay portion of a sick-call visit.

7. You should also know that CVOP is not responsible for any medical or dental expenses incurred by residents in any Level IV program unless the following procedure is followed:
   A) If an emergency medical need occur while on CVOP property, immediately contact a staff member. CMS will then be immediately notified by staff of CVOP to solicit appropriate action.
   B) If an emergency medical need occurs while away from the CVOP, immediately call the CVOP @659-6100 and inform staff of the problem. DOC staff will contact medical and/or give directives. Each case will be evaluated by case-by-case basis concerning cost of DOC/CMS. Decisions made by CMS are final.

## I. <u>COUNT PROCEDURES</u>

1. During daytime the headcounts will be conducted at CVOP in the following manner. Code Yellow will be announced in the building 15 minutes before normal count times. When count is announced in the building all residents shall then proceed to their housing pod and be standing in front of their assigned bunk until count is announced in the building as clear.

2. Telephones, televisions, and showers are off-limits during count including code yellow and code red. TVs and telephones will be turned off when code yellow is announced.

3. After lights out at 9pm the count will be conducted while the residents are lying in their bunks.

4. Residents will remain quiet on the pod during count and until count is announced as clear.

5. Emergency and unannounced headcounts may be conducted at any time by staff. In the event an emergency or unannounced count occurs, you are to follow the instructions of the on duty staff.

D00345

6

## J. FREE ISSUE

1. Free issue will be distributed weekly between 6pm and 9pm each Saturday. All residents are required to participate.
2. When your housing pod is called for free issue all residents will stand in front of their assigned bunk and await staff escort. Once the escorting staff gives the command 'roll out' the residents will exit the pod in an orderly fashion, staying in a straight line to the right side of the hallway. There will be no talking or noise making of any kind to, from, or during free issue from any resident.
3. Each resident must turn in the used item they wish replaced before receiving a new item. Do not throw away your used items – you will need them to receive new ones.
4. When each resident is completed with their free issue, they will return to their housing pod in an orderly manner while staying in a straight line along the right side of the hallway.

## K. LAUNDRY

1. Laundry service will be provided twice weekly at CVOP. Each resident will be assigned two laundry bags upon admission. Laundry must be sorted as follows.
2. Sheets and pillowcases will be exchanged for clean ones (on a one for one basis) twice per week by staff; therefore, sheets and pillowcases will not be sent out in the laundry bags.
3. All whites, including thermal underwear, socks, and underclothes will be included in one bag. All blue uniform parts will be included in the other bag. It is important that the laundry is separated by color, or they will be rejected by the laundry and not be washed. **BAGS MUST BE TIED TIGHT TO PREVENT OPENING DURING WASH.**
4. Monday and Thursday of each week the laundry will be collected in the Staging Area next to the Duty Office on your way to dinner. You are responsible to bring your laundry with you to the evening meal on the collection days or it will not be washed.
5. Your laundry will be returned to you the next day in the following manner. Laundry will be delivered to each pod for distribution among the assigned offenders. Any missing items should be handled through the laundry slip request, and may not be responded to the same day. In the event that all of your laundry is missing you should notify the officer working in your area. Laundry workers are not permitted to take requests from offenders.

## L. VISITS

1. Your family/friends may schedule a visit by calling the phone number on the front page of this manual. Each offender is limited to one visit per week. Once a visit has been made there will be no changes or cancellations allowed. Visits are scheduled on a first come first serve basis. **IMPORTANT: Read the following completely to prevent your visitor from being denied entry. It is YOUR responsibility to inform your visitor of the following rules!!!**
2. Visits are scheduled by phone: **1) Monday  between 0900am and 0230pm**
   **2) Tuesday  between 0900am and 1100am**
   **3) Friday    between 0900am and 1100 am**
3. Visits will be held in the Dining Hall on Saturdays and Sundays during the following times:
   A. 8:15 am until 9:15 am
   B. 9:30 am until 10:30 am
   C. 12:30 pm until 1:30 pm
   D. 1:45 pm until 2:45 pm
4. **Your visitors must arrive before the scheduled visit or they will not be permitted to visit.** We recommend that you ask your visitor to arrive 10 – 15 minutes early to prevent loss of visiting time, or being late and refused entry.
5. Your visitor is permitted to bring in food for consumption during the visit as long as it is in **clear containers** that can be inspected by staff. No glass or ceramic containers of any kind are permitted in the facility. Beverages **must** be in factory sealed containers, such as unopened two liter bottles or cans of soda. No aluminum foil or metal silverware is permitted; plastic wrap and plastic utensils are permitted. NOTE: **All food will be in clear containers or will not be permitted in the building.**  These are some examples of items that must be relocated in a clear container to be permitted: (candy bar, potato chips, fast food, deli sandwiches, pizza, ice cream, etc.) **NO EXCEPTIONS!**
6. Your visitor must bring State of Delaware I.D. or drivers license to gain entry into the facility, or other equivalent I.D. An adult must accompany anyone under the age of 18 years or they will not be allowed to visit. Visitors must dress according to the following guidelines; no suggestive or provocative attire will be permitted, shorts and skirts must be

00034

7

no more than three inches above the knee, no spandex or tight fitting clothing will be permitted. The final judge of what is appropriate will be the Shift Supervisor.

7. Your visitors may bring in their **ID** and one set of car keys only in addition to the food items listed above. Your scheduled visitors also may bring you any of the following cosmetics: **2 deodorants, 3 bars of soap, one toothbrush, one toothpaste;** provided that your total amount does not exceed the allowed amount. **No other items are allowed,** unless medically necessary, or to be used in the care of an infant.

8. Limit of two adults are allowed to visit you at one time. Children are allowed, but must stay seated and be supervised during the visit. If there is any inappropriate behavior by your visitors or yourself, the visit will be ended and your visitor asked to leave the building.

9. You are permitted one embrace with your visitors at the beginning of the visit, and one embrace at the end of your visit. During the visit you will be seated across the table from your visitors and hands must remain above the table and visible at all times. You are instructed to keep your distance from your visitor while seated.

10. No communication is allowed between offenders during the visit. If you attempt to communicate with another offender, or another offender's visitors, your visit will be cancelled and disciplinary action will be taken.

# M. <u>REQUESTS</u>

1. This section is designed to assist in directing your requests to the proper office. Staff may be able to direct your questions not covered in this section.

2. <u>Clothing Requests</u> – Remember your used item is needed to exchange for new items. **All clothing requests** must be made in writing through In-House mail to Clothing Officer using a "Laundry Slip".

3. <u>Records</u>- All requests for status sheets, good time questions and other records matters should be made in writing through In-House mail to Records Department.

4. <u>Business Office</u>- Your account information may be requested through In-House mail to the Business Office.

5. <u>Probation/Home Confinement</u>- Any questions regarding H/C or probation should be through In-House mail to Probation Officers.

6. <u>Grievances</u>- Grievances should be submitted to the Shift Commander on duty for review and possible resolution.

7. <u>Legal Forms</u>- Any offender who wishes to obtain a needed form to file a petition with the court must request the proper form through in house mail to Probation and Parole Staff including any forms requested from DCC Law Library.

8. Your request should be specific and legible otherwise it will not be answered.

9. <u>Notary</u>- Request for notary work should be submitted to the Records Department.

# N. <u>OFFENDER ACCOUNTS</u>

1. You are not allowed to possess any monies at any time while at CVOP. If you are found to possess any monies you will receive a program violation. If you are found guilty by the M.D.T. board, the money may be forfeited as contraband to the States General Fund.

2. You are responsible to pay court fines and/or costs and restitution that have been levied against you by a court. This will be done through an intercept program designed by the State.

3. This facility uses the Pay-To process to send funds to friends or family. You are required to submit an addressed envelope along with the Pay-To to the Officer in your assigned area.

# Q.    <u>MDT(Classification)</u>

1. Offenders are assigned jobs through a classification process by the MDT(Multi-Disciplinary Team). All offenders are expected to work if they meet classification criteria.

2. A promotional system is used by MDT to move offenders from one work crew to another. Good work habits and good behavior, both inside and outside of the building, will be considered when moving offenders to more desirable work assignments. Other factors may also be considered.

D00347
8

# R. MDT(Discipline)

1. All offenders are expected to read and abide by the procedures outlined in this manual. Offenders are also responsible for any direct order given by any D.O.C. staff member. Violations of these procedures or direct orders will be handled as a discipline problem.

2. Discipline problems may be handled by either the shift commander, or the MDT board.

3. First, the shift commander may review any program violation completed on their shift. Minor infractions may be handled by the shift commander with a twenty-four hour loss of privileges which may included loss of yard, phone, and snacks. It also may include extra work assignments, or temporary removal from a work assignment until heard by the MDT board. All sanctions handed out by the shift commanders will begin immediately upon the hearing and last for twenty-four hours.

4. Second , the shift commander may refer the program violation to the MDT board. The board will meet on a regular basis to review program violations. The sanctions that may be imposed by the board may include extra work assignments, reassignment of current work position, loss of all privileges, relocation within the building, classification to another facility, a probation/parole violation, or other sanction as deemed appropriate.

5. "Privileges" that may be taken by the MDT board could include phone, yard, visits, snacks, or others as deemed appropriate. The specific privileges that are lost will be stated at the time of the hearing.

6. The privileges will be taken for a specific period of time, which will be stated at the MDT hearing.

7. All MDT sanctions will begin at "lights on" the day after the MDT hearing, unless otherwise stated.

8. A copy of the results will be forwarded to the offender through inmate mail.

9. An inmate wishing to appeal any sanction may do so by writing to the Deputy Warden of CVOP. This may be done on a "counselor slip" or blank sheet of paper, and should be deposited in the "request to see staff" box located in the main hallway.

10. Any sanction imposed will remain in effect until overruled by the Deputy Warden.

B00348

A000177

# ARREST/INCIDENT REPORT

| | |
|---|---|
| **Report#** : 22-05-06 | **Report Date & Time** : 01/25/2005 / 17:20 |
| **Category** : Initial | **Incident Date & Time** : 01/25/2005 / 16:40 |
| **Facility** : CVOP Central Violation of Probation Center | |

**Location of Incident** : MAIN HALLWAY
SMYRNA DE 19977

**Type of Report** : Arrest : [ ]    Incident : [X]    Search : [ ]    Others : [ ]

**Description if Others** : FAIL TO OBEY AN ORDER, DISRESPECT & DISORDERLY BEHAVIOR

| Relation | Name(L/F/M/S) | Address | Type of Case | Current Offense |
|---|---|---|---|---|
| Reporting Person | McDonald, David P<br>Staff Lt./Lt | 875 Smyrna Landing Road<br>SMYRNA DE 19977<br>302-659-6100 | N/A | N/A |
| Offender | WILSON, JERMAINE<br>(00456612) | 22 Geneva Ct Apt B 2<br>NEWARK DE 19702<br>302-286-0757 | Sentenced | CONSP 2ND |

**Arrest Caplas** : NA        **Admin Warrant/Capias #** : NA        **Arrest Warrant** : NA
**New Charges** : NA

**Supervisor Notified:** No        **Pre-Arrest Checklist completed:** No

**Evidence :** No    **Collected By:** NA        **Evidence Type:** NA

**Residence:** No    **Owner** : _        **Phone:** NA
**Searched**

**Property Seized:** No    **List :** NA
**Vehicle Search Details:** NA        **State :** NA        **Year :** NA
**Make** : NA        **Model :** NA        **Color:** NA

**Property Damage:** NA

**Restraint Used :** Physical : [ ]    Chemical : [X]    Stun Device : [ ]    Weapon : [ ]

**Force Used** : No    **Type** : NA

**Injuries** : No    **Type** : NA

**Hospitalized :** No    **Where :** NA

## Facts of Incident :

At the above date, time and location C/O McDonald observed I/M Wilson talking in the hallway. I/M Wilson was instructed to stop talking in the hallway, but continued to talk. C/O McDonald told I/M Wilson a 2nd time to stop talking when I/M Wilson stated "fuck that" and also stated "since when did you become a fucking tough guy." At this time C/O McDonald told I/M Wilson to come with him to the holding cell which he refused. Finally, with the help of CPL Boone, I/M Wilson went to the holding cell. After closing the cell door I/M Wilson then called C/O McDonald a "fucking sucker." A short time later, C/O McDonald and CPL Boone heard I/M Wilson kicking on the cell door. Upon arrival I/M Wilson was very disorderly and still kicking on the door and yelling. C/O McDonald gave I/M Wilson 3 orders to sit down and stop kicking on the door. I/M Wilson refused and C/O McDonald opened the cell door and gave I/M Wilson a 1 second burst of Capstun at which time I/M Wilson stopped his disorderly behavior. I/M Wilson was examined by Nurse Sandy who stated that he was OK. S/LT May was notified of this incident.

## Follow Up Comments :

N/A

| | |
|---|---|
| **Reporting Officer** : McDonald David P | **Reviewing officer** : Percich Robert P |
| **Date** : 1-25-05 | **Date** : 1/25/05 |

D00261

## ARREST/INCIDENT REPORT

| | |
|---|---|
| **Report#** : <u>22-05-06</u> | **Report Date & Time** : <u>01/25/2005 / 17:20</u> |
| **Category** : <u>Initial</u> | **Incident Date & Time**: <u>01/25/2005 / 16:40</u> |
| **Facility** : <u>CVOP Central Violation of Probation Center</u> | |

**Supervisor Comments :**

N/A

---

**Reporting Officer :**     McDonald David P
        **Date :** 1-25-05

**Reviewing officer :**     Percich Robert P
        **Date :** 1/25/05

A000179

D00262

## ARREST/INCIDENT REPORT

| | |
|---|---|
| Report# : 23-05-06 | Report Date & Time : 01/25/2005 / 17:40 |
| Category : Initial | Incident Date & Time : 01/25/2005 / 16:35 |
| Facility : CVOP Central Violation of Probation Center | |

**Location of Incident** : CVOP HOLDING CELL
SMYRNA DE 19977

**Type of Report** : Arrest : [ ]    Incident : [X]    Search : [ ]    Others : [ ]

**Description if Others** : N/A

| Relation | Name(L/F/M/S) | Address | Type of Case | Current Offense |
|---|---|---|---|---|
| Reporting Person | Ayars, Janet Correctional Officer | 875 Symrna Landing Road SMYRNA DE 19977 302-659-6100 | N/A | N/A |
| Offender | WILSON, JERMAINE (00456612) | 22 Geneva Ct Apt B 2 NEWARK DE 19702 302-286-0757 | Sentenced | CONSP 2ND |

Arrest Capias : NA           Admin Warrant/Capias # : NA           Arrest Warrant : NA
New Charges : NA

Supervisor Notified: No           Pre-Arrest Checklist completed: No

Evidence : No     Collected By: NA                    Evidence Type: NA

Residence: No     Owner : _                                      Phone: NA
Searched

Property Seized: No     List : NA
Vehicle Search Details: NA                    State : NA               Year : NA
Make           :   NA                         Model : NA               Color: NA

Property Damage: NA

Restraint Used : Physical : [ ]     Chemical : [X]     Stun Device : [ ]     Weapon : [ ]

Force Used : No      Type : NA

Injuries : No      Type : NA

Hospitalized : No     Where : NA

**Facts of Incident :**

On the above date and approximate time, C/O McDonald placed Offender Jermaine Wilson in the holding cell without incident. Shortly after being placed in the holding cell, Offender Wilson began kicking the door of the holding cell and yelling. Cpl. Boone and C/O McDonald arrived at the holding cell and told Offender Wilson three times to stop kicking the door. Offender Wilson refused, and at that time C/O McDonald opened the door and sprayed Offender Wilson with capstun.

**Follow Up Comments :**

N/A

**Supervisor Comments :**

N/A

| Reporting Officer : Ayars Janet | Reviewing officer : Percich Robert P |
|---|---|
| Date : 1-25-05 | Date : 1/25/05 |

D00260

# ARREST/INCIDENT REF RT

| | | | |
|---|---|---|---|
| **Report#** : 24-05-06 | | **Report Date & Time** : 01/25/2005 / 18:00 | |
| **Category** : Initial | | **Incident Date & Time** : 01/25/2005 / 16:40 | |
| **Facility** : CVOP Central Violation of Probation Center | | | |

**Location of Incident** : HALLWAY DURING CHOW
SMYRNA DE 19977

**Type of Report**    Arrest : [ ]    Incident : [X]    Search : [ ]    Others : [ ]

**Description if Others** : FAILING TO OBEY AND DISRESPECT AND DISORDERLY

| Relation | Name(L/F/M/S) | Address | Type of Case | Current Offense |
|---|---|---|---|---|
| Reporting Person | Boone, Johnny<br>CO Corporal/Sgt. Small Inst. | 875 Symma Landing Road<br>SMYRNA DE 19977<br>302-659-6100 | N/A | N/A |
| Offender | WILSON, JERMAINE<br>(00456612) | 22 Geneva Ct Apt B 2<br>NEWARK DE 19702<br>302-286-0757 | Sentenced | CONSP 2ND |
| W -Witness | McDonald, David P<br>CO Corporal/Sgt. Small Inst. | 875 Symma Landing Road<br>SMYRNA DE 19977<br>302-659-6100 | N/A | N/A |

**Arrest Capias** : NA    **Admin Warrant/Capias #** : NA    **Arrest Warrant** : NA
**New Charges** : NA

**Supervisor Notified:** No    **Pre-Arrest Checklist completed:** No

**Evidence :** No    **Collected By:** NA    **Evidence Type:** NA

**Residence:** No    **Owner** : _    **Phone:** NA
**Searched**

**Property Seized:** No    **List :** NA
**Vehicle Search Details:** NA    **State :** NA    **Year :** NA
**Make** : NA    **Model :** NA    **Color:** NA

**Property Damage:** NA
**Restraint Used :** Physical : [ ]    Chemical : [X]    Stun Device : [ ]    Weapon : [ ]
**Force Used** : No    **Type** : NA
**Injuries** : No    **Type** : NA
**Hospitalized :** No    **Where :** NA

**Facts of Incident :**

While returning from chow to the West Wing I/M Wilson was talking in the hallway. After the inmate was told there was no talking in the hallway while walking to the wing he kept on talking and being disrespectful to CO McDonald. I/M was then taken to the holding cell. A few minutes later inmate Wilson started kicking the cell door and glass. RP and CO McDonald told the inmate to stop kicking on the door and glass. Inmate Wilson still kicked on the door. CO McDonald opened the door and the inmate got aggressive and CO McDonald capstunned inmate Wilson. Inmate was seen by medical.

**Follow Up Comments :**

N/A

**Reporting Officer** :    Boone Johnny        **Reviewing officer** :    Percich Robert P
**Date** : JAN. 25, 2005        **Date** : 1/25/05

D00263

ARREST/INCIDENT REPORT

| | | | |
|---|---|---|---|
| Report# | : 24-05-06 | Report Date & Time : | 01/25/2005 / 18:00 |
| Category | : Initial | Incident Date & Time: | 01/25/2005 / 16:40 |
| Facility | : CVOP Central Violation of Probation Center | | |

**Supervisor Comments :**

N/A

Reporting Officer :          Boone Johnny

Date : JAN. 25, 2005

Reviewing officer :          Percich Robert P

Date : 1/25/05

A000182

D00264

WARRANT #
9639

Date:01/25/2005



CVOP Central Violation of Probation Center
875 Symrna Landing Road
SMYRNA, DE 19977
Phone No. 302-659-6100
ADMINISTRATIVE WARRANT - Standard

RE: Wilson, Jermaine    Warrant Date:01/25/2005

SBI#: 00456612    R/S: B / M    DOB:01/15/1985

Judge/Court :The Honorable RICHARD R COOCH / NEW CASTLE COUNTY SUPERIOR COURT

Charge(s)  : 0212001901 - IN03011930 - CONSP 2ND

The above named offender is under Level IV supervision by the Department of Correction and is alleged to be in violation of their conditions of supervision.

I, Records, Mike                     ,a Probation/Parole Officer of the Department of Correction, do hereby deputize an Sheriff, Constable, or Peace Officer of the State of Delaware to arrest and detain:
Wilson, Jermaine                     ,persuant to 11 Del. Code, 4334(b) and/or 4352(a).

Warrant Comments: N/A

IT IS ALLEGED THAT THE FOLLOWING CONDITION(S) OF SUPERVISION HAS (HAVE) BEEN VIOLATED:

Condition # : VC3    You Must Abide By All The Rules And Regulations Of The County Community Correction Center And/Or The Residential Treatment Program As Described In The Orientation Manual.

On 1/25/05, offender Wilson was told to stop talking in the hallway by C/O McDonald during evening feeding. He continued to talk and became disorderly when this was again addressed. He was ordered into the holding cell, but refused initially to go. He eventually locked into the holding cell, but then began kicking and banging on the cell door. He was ordered three times to stop by C/O McDonald, but refused to do so. He was capstunned at that point to prevent damage to state property.

Previously, offender Wilson incurred program violations for refusing to work on the outside work projects on both 1/3/05, and 1/19/05.

VOP HAS BEEN SUBMITTED REQUESTING A CAPIAS BE ISSUED . (Circle One) YES    NO
Administrative Warrant must be faxed to the sentencing judge and the Pre-Sentence office upon arrest.

SIGNED: _____    DATE: 1/25/05

LEVEL 4    BAIL AUTHORIZATION

HOLD WITHOUT BAIL UNTIL THE VIOLATION HEARING ON :

SO ORDERED: _____    DATE:_____

Video
1-26-05

D00098

Pages A000184 thru A000185

CONFIDENTIAL MEDICAL RECORDS

Delaware Department of Correction - [Offender Housing Details and History - MCV (DH0F)]

Intake  Records  Classification  Case Mgmt  Grievance  Disciplinary  Movement  Programs  Tran/Schedule  Escape  Admin  Window

Rebecca McBride - DCC

Select Offender SBI Number 00456612                          Today's Date   12/02/2005 10:34 AM

Name  WILSON        JERMAINE          DOB 01/15/1995  R/S 3   M   Sec/Cust          SENTAC 0   Multi Status  N
Location Details        PO                              Location         PO

Offender Details | Offender History

Date Range:  From  01/25/2005   To  02/18/2005                      Select

OFFENDER HOUSING HISTORY

| Bed       | Bed Type | Date Entered | Time Entered | Date Departed | Time Departed |
|-----------|----------|--------------|--------------|---------------|---------------|
| Bed 705   |          | 01/19/2005   | 09:46        | 01/25/2005    | 11:08         |
|           |          | 01/25/2005   | 21:04        | 02/18/2005    | 03:13         |

BED LOCATION                              MOVEMENT COMMENTS

Facility    DCC Delaware Correctional Center      Comments
Building    Bldg 18
Wing / Unit
Floor       Upper
Tier / Pod  Tier D
Cell        Cell 6

Clear        Cancel/Exit

Record: 2/2

D00102

# SUPERIOR COURT OF DELAWARE
## NEW CASTLE COUNTY

X VIDEO (fax to institution) ____ COURTROOM (hand to officer/fax to institution)

RECEIVED

This commitment/release is effective pursuant to the dispositions noted below.

05 FEB 9 AM 10 44

D.C.C. REC. 2/1/05

| Case ID Number **0212001901** | Date **2/1/05** | |
|---|---|---|
| Defendant Name **JERMAINE WILSON** | SBI **00456612** | DOB **1/15/85** |
| AKA | | |

(Circle either Commitment or Release and check appropriate blocks)

| COMMITMENT | RELEASE |
|---|---|
| X In Default of Bail:<br>____ Bail Set Secured<br>____ Bail Increased to Secured<br><br>____ Bail Revoked pursuant to statute upon conviction<br>____ Bondsperson Relieved<br><br>Other: **HWOB** | ____ Bail Reduced to Unsecured/Own Recognizance (Defendant must sign bail bond)<br>____ Bail Posted<br><br>____ All charges dismissed for this ID number<br><br>____ All charges nolle prossed for this ID number<br><br>Other: ____ |

| Next Proceeding (Type, Date & Time): | **VOP: 2/10/05 AT 9:00** |
|---|---|

(Bail Changes: Fill in only if bail is changed or set.)

| Criminal Action Number | Bail Amount and Type |
|---|---|
| **VN03-01-1930 - VOP** | $ **HWOB** |
| | $ |
| | $ |
| | $ |
| | $ |

Bail Conditions:  __ Pretrial Services Supervision  __Drug/Alcohol Testing/Treatment  __No Contact

| Judge: **REYNOLDS** | Clerk: FOOTE |
|---|---|

**Sharon Agnew**
PROTHONOTARY

INSTITUTION RECEIPT

Institution Housing Inmate: ____ HRY X DCC ____ SCI ____ WCF ____ WCI ____ MCI ____ SWRC ____ PC ____ SHH

Original - Court     CC: DOC/Institution (via officer and/or fax) – Defendant

*KS/SCNCC*

D00209

A000187

21554



**DEPARTMENT OF CORRECTION**
**BUREAU OF COMMUNITY CORRECTION**
CVOP Central Violation of Probation Center
875 Symma Landing Road
SMYRNA DE, 19977
Phone#: 302-659-6100

VIOLATION REPORT – LEVEL - IV
CASELOAD TYPE - Level 4 - Work Release

To  :  **Honorable RICHARD R COOCH**
**NEW CASTLE COUNTY SUPERIOR COURT**

IN RE:  WILSON, JERMAINE                                    SBI#:  00456612
RACE:  Black                        SEX: Male               DATE: 02/09/2005
DOB :  01/15/1985

| | | |
|---|---|---|
| CASE TYPE : Sentenced | SENTENCING DATE : | 06/20/2003 |
| JUDGE/COURT : Honorable RICHARD R COOCH | MAXIMUM EXPIRATION DATE : | 03/08/2005 |
| NEW CASTLE COUNTY SUPERIOR COURT | PAROLE RELEASE DATE : | N/A |
| FINE : N/A | IMPRISONMENT EFFECTIVE : | 09/09/2004 |
| COSTS : N/A | PROBATION EFFECTIVE DATE : | |
| VCF : N/A | IMPRISONMENT IMPOSED : | 1 Yr(s) |
| RESTITUTION : N/A | IMPRISONMENT SUSPENDED : | 1 Yr(s) |
| DRUG EDUCATION FUND: N/A | PROBATION IMPOSED : | 5Mth(s) 10Day(s) |

CHARGE(S):  0212001901-IN03011930 - Consp 2nd

SPECIAL CONDITIONS:
CRT1. Other Conditions:

CONDITION COMMENTS:
_As to 1930:  To serve 1 year at Level 5, suspended for 1 year at Level 4 Plummer Center.  Suspend after 6 months for 6 months at Level 3.  Level 4 hold at 5.

DCB

ADDRESS    :22 GENEVA CT APT B 2, NEWARK DE- 19702
EMPLOYMENT:N/A
SERVICE REQUESTED:YES      TYPE:Summons

Submitted by: _____

Records, Mike
(Probation/Parole Officer)

D00281

**A000188**

CHARGE(S): 0212001901-IN03011930 - Co    2nd

## EXHIBIT B

It has been alleged that the following conditions of supervision have been violated:

**VC3**  **You Must Abide By All The Rules And Regulations Of The County Community Correction Center And/Or The Residential Treatment Program As Described In The Orientation Manual.**

On 1/25/05, offender Wilson was told to stop talking in the hallway by C/O McDonald during evening feeding. He continued to talk and became disorderly when this was again addressed. He was ordered to the holding cell, but refused initially to go in. He eventually locked into the holding cell, but then began kicking and banging on the cell door. He was ordered three times to stop by C/O McDonald, but refused to do so. He was capstunned at that point to prevent damage to state property, himself, or staff.

Previously, offender Wilson incurred program violations for refusing to work on the outside work projects on both 1/3/05, and 1/19/05. He had been seen by the MDT board on the first write up, and was placed back out. He was waiting to be seen the second time by MDT when he incurred the instant violation.

This report has been reviewed and approved by Records, Mike  on 02/09/2005.

Approved

Records, Mike
**Supervisor**

Records, Mike
**Probation/Parole officer**

A000189

D00282

IN RE :  Wilson, Jermaine                    SBI# :  00455512          DATE : 02/09/2005
CHARGE(S): 0212001901-IN03011930 - Cor    nd

## HISTORY OF SUPERVISION / VIOLATION SUMMARY

This is the second violation on this case. According to Deljis, he has one other violation of probation on another case.

His criminal profile shows 11 arrests, with 29 total charges. Of these, twenty nine are listed as criminal complaints. He is twenty years old.

Mr. Wilson's behavior while here at this institution has been one of defiance. He has refused to work twice on the community service projects, as is part of the requirements of the VOP Center. He has also blatantly refused to comply with direction of security staff.

A higher level of supervision is needed at this time.

## RECOMMENDATION

If Mr. Wilson is found in violation of probation, it is respectfully recommended that his probation be revoked on IN03-01-1930, and he be resentenced to 1 year Level 5, suspended after 90 days for 30 days Sussex VOP Center, followed by one year Level 3. All previous conditions should be reimposed.

This report has been reviewed and approved by
Records, Mike  on 02/09/2005.

Supervisor:            Records, Mike                    Officer:            Records, Mike

D00283

SERVICE REQUEST

IN THE  NEW CASTLE COUNTY SUPERIOR COURT  COURT OF THE  STATE OF DELAWARE

OFFENDER:  WILSON, JERMAINE                                      SBI#: 00456612

CHARGE(S): 0212001901-IN03011930 - Consp 2nd

It is alleged that **Wilson, Jermaine**  has violated the following conditions of supervison :

[X]  **VC3**    You Must Abide By All The Rules And Regulations Of The County Community Correction Center And/Or The Residential Treatment Program As Described In The Orientation Manual.

**Identifying information is attached as Exhibit A. The facts of the alleged Violation are attached as Exhibit B**

**Service Requested:** YES    **Type:** Summons

**Address:** DCC  Delaware Correctional Center, Smyrna Landing Road, SMYRNA, DE-19977

**Bail Amount:**                              Type :  N/A

_____                      02/09/2005
Records, Mike
**Probation/Parole officer**

    **SO ORDERED**

_____
**Honorable  RICHARD R COOCH**                      02/09/2005

apias return: _____        **(Forthwith or specified time)**

**Bail Amount:** _____    Secured _____  Cash only _____  Unsecured _____

**Original:** Prothonotary
**Copy**   : Probation/Parole Officer

D00284

A000191

The following information is furnished ith respect to the subject for whom a ca s or warrant is requested.

| NAME: WILSON, JERMAINE | SBI#: 00456612 |
|---|---|

**OFFENSES:** Consp 2nd (F/G)

CAUTION CODE:NO    Reasons if YES: N/A

| RACE: BLACK | | SEX: Male | HEIGHT: 5'11" | WEIGHT: 190 LBS |
|---|---|---|---|---|
| EYES: Brown | HAIR: Black | | SKIN : Medium Brown | |
| FBI : 680388RB8 | SOC : ▮▮▮▮ | FPC : N/A | | DOB :01/15/1985 |

**ADDRESS :** 22 Geneva Ct Apt B 2 Newark DE 19702

| OLN : N/A | OLS : | VYR : |
|---|---|---|
| VMS : N/A | OLY : | VMO : N/A |

**SMT:** Discolor Chest

### ALIAS INFORMATION

NAME:

DOB : 01/15/1985

SOC : ▮▮▮▮▮▮▮

If additional information is needed for apprehension of this probationer/parolee,
Please contact the undersigned officer at :

Probation/Parole Office
VOP Central Violation of Probation Center
75 Symrna Landing Road
RNA DE, 19977
one#: 302-659-6100

Records, Mike
Probation/Parole Officer
Bureau of Community Corrections

D00285

DOC
BB
P
.30

DCC

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

16

STATE OF DELAWARE

VS.

JERMAINE WILSON

Alias: No Aliases

DOB: 01/15/1985
SBI: 00456612

CASE NUMBER:                    CRIMINAL ACTION NUMBER:
0212001901                          VN03-01-1930-01
                                    VIOL O/PROBATN
                                    ORIG. CHARGE:
                                    CONSP 2ND(F)

VIOLATION OF PROBATION SENTENCE ORDER

NOW THIS 10TH DAY OF FEBRUARY, 2005, IT IS THE ORDER OF
THE COURT THAT: The defendant is found  not in violation.
Defendant is sentenced as follows:

AS TO VN03-01-1930-01 : TIS 11 Del.C.05120001FG
VIOL O/PROBATN - VIOLATION WITHDRAWN

Effective February 10, 2005  the defendant is sentenced
as follows:

- This violation is hereby withdrawn.

FILED
PROTHONOTARY
2005 FEB 14  PM 4: 22

**APPROVED ORDER**      1      February 11, 2005 16:02

WILSON0080

<u>SPECIAL CONDITIONS BY ORDER</u>

STATE OF DELAWARE
        VS.
JERMAINE WILSON
DOB: 01/15/1985
SBI: 00456612

                        CASE NUMBER:
                          0212001901


NO SPECIAL CONDITIONS AT ORDER LEVEL


_____
JUDGE RICHARD R COOCH


FILED
PROTHONOTARY
2005 FEB 14 PM 4:22


**APPROVED ORDER**     2     February 11, 2005 16:02


**WILSON0081**

**A000194**

```
Position cursor or enter screen value to select
GC701A                    ***** Courts Case Management *****
Dec 16,05                     - Browse Docket -                    1 more >

ame: WILSON JERMAINE              SBI#: 00456612  DOB: 01/15/1985
.ge Of Case: 1108  Status: SC    FC    Crt: S  Loc: N  Company Ind:
     Event     Date     Ref
    -------  ----------  ----  --------------------------------------------
 01 SENT    06/20/2003   13  SENTENCING CALENDAR: DEFENDANT SENTENCED.
 02 SENT    06/20/2003   14  SENTENCE:  ASOP ORDER SIGNED AND FILED 7/9/03.
 04 VOP     02/10/2005       VIOLATION-OF-PROBATION HEARING:  VIOLATION WITHDRAWN
 05 SENT    02/10/2005   16  VIOLATION OF PROBATION ASOP SENTENCE ORDER SIGNED AND
 06 NOTICE  04/01/2005   17  NOTICE OF DEF'S DEATH ON FEB. 18, 2005 RECEIVED FROM
 07 ORDER   04/06/2005   18  ORDER: DUE TO DEF'S DEATH ON FEB. 18, 2005, UNPAID CO
 08 MONEY   04/07/2005   19  NOTICE FROM ACCOUNTING DEPARTMENT.  NO MONIES WERE PA
 09 CASE    04/08/2005   20  CASE CLOSED.
 10 TRANS   06/24/2005   21  TRANSCRIPT FILED.
                             *** End of Data ***


Case#: 0212001901  Date:          Event:          Crt S  Detail    Sel:
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help  retrn CASE DETL  SCHED CHARG bkwrd SENT  PRINT WANTP  < >  main
```

D00370

**A000195**

```
Enter changes
GC710A                  ***** Courts Case Management *****              GC710AM
Dec 16,05                     - Docket Maintenance -                    11:34 AM

   Case #: 021▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ FILED Date 02012005
      Name: WILSON JERMAINE                            Summary/Detail
      SBI#: 00456612   DOB: 01151985                   Crt: S Loc: N

   Judge: 000637  Assigned:
   Cost:               Cost Type:        Ref#: 15    Added By: CSCJFOO
Docket Text
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2      PROBATION OFFICER: MIKE RECORDS
3      BAIL HEARING HELD THIS DATE AND BAIL SET ON VOPS AS FOLLOWS:
4      BAIL SET:  HELD WITHOUT BAIL                    0.00
5      VOP: 2/10/05 AT 9:00 BEFORE J. COOCH
6
7
8
9
10

Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7--PF8---PF9---PF10--PF11--PF12---
      help retrn      conf            bkwrd frwrd                     main
```

D00371

**A000196**

```
Enter changes
GC710A              ***** Courts Case Management *****          GC710AM
Dec 16,05                 - Docket Maintenance -               11:35 AM

    Case #: 0212001901   Event SENT   Action FILED      FILED Date 02102005
      Name: WILSON JERMAINE                               Summary/Detail
      SBI#: 00456612   DOB: 01151985                      Crt: S Loc: N

    Judge: 000441   Assigned:
    Cost:           Cost Type:        Ref#: 16    Added By: CSCMFER
Docket Text
1      VIOLATION OF PROBATION ASOP SENTENCE ORDER SIGNED AND FILED 02/14/05.
2
3
4
5
6
7
8
9
10

Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help  retrn       conf          bkwrd frwrd                     main
```

A000197

D00372

```
Position cursor or enter screen value to select
GC377A                ***** Court Case Management *****
Dec 16,05                  - Document Browse -                    11:35 AM

                          Document Text
-----------------------------------------------------------------------

           IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
                 IN AND FOR NEW CASTLE COUNTY


STATE OF DELAWARE

       VS.

JERMAINE WILSON

Alias: No Aliases

DOB: 01/15/1985
SBI: 00456612

Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  retrn                      bkwrd frwrd PRINT       PURGE main
```

D00373

```
Position cursor or enter screen value to select
GC377A              ***** Court Case Management *****
Dec 16,05                - Document Browse -                    11:35 AM

                        Document Text
   ----------------------------------------------------------------------


 CASE NUMBER:             CRIMINAL ACTION NUMBER:
 0212001901                   VN03-01-1930-01
                              VIOL O/PROBATN
                              ORIG. CHARGE:
                              CONSP 2ND(F)


        VIOLATION OF PROBATION SENTENCE ORDER


  NOW THIS 10TH DAY OF FEBRUARY, 2005, IT IS THE ORDER OF
THE COURT THAT:  The defendant is found  not in violation.
Defendant is sentenced as follows:

Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  retrn                       bkwrd frwrd PRINT       PURGE main
```

D00374

```
Position cursor or enter screen value to select
GC377A                ***** Court Case Management *****
Dec 16,05                 - Document Browse -                    11:35 AM

                          Document Text
 -----------------------------------------------------------------------


    AS TO VN03-01-1930-01 : TIS 11 Del.C.05120001FG
    VIOL O/PROBATN - VIOLATION WITHDRAWN

    Effective February 10, 2005  the defendant is sentenced
    as follows:

    - This violation is hereby withdrawn.


              SPECIAL CONDITIONS BY ORDER


Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help  retrn                        bkwrd frwrd PRINT       PURGE main
```

D00375

```
Position cursor or enter screen value to select
GC377A              ***** Court Case Management *****
Dec 16,05                 - Document Browse -                    11:35 AM

                          Document Text
      -------------------------------------------------------------

    ATE OF DELAWARE
        VS.
  JERMAINE WILSON
  DOB: 01/15/1985
  SBI: 00456612
                          CASE NUMBER:
                              0212001901


  NO SPECIAL CONDITIONS AT ORDER LEVEL




Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help  retrn                         bkwrd frwrd PRINT      PURGE main
```

D00376

**A000201**

1020252
Smyrna Landing Road
SMYRNA DE. 19977
Phone#: 302-653-9261

# INCIDENT REPORT

| Group#: 1560 | Type: Inmate Involved | Incident Date: 02/18/2005 | Time: 22:42 | Confidential: No |
|---|---|---|---|---|

**Facility:** DCC  Delaware Correctional Center                     Followup Required : No

**Incident Location:** Bldg.18 D Tier

**Location Description:** in DU6 cell

**Violated Conditions:**

**Description of Incident:**

On this date and approx time I went on D-wing to do a phone punch and inmates count. I went on the lower cells and started to count and do a phone punch, I went to the upper cells and did a phone punch and started to count inmates. I walked by DU6 and saw Inmate Jermain Wilson hanging from his locker and at that time notified C/O Michelle Phillips of an inmate hanging in the cell. C/O Phillips notified Sgt Carpenter, Lt Welcome, C/O Paul Unsworth, and John Barber. All building staff arrived on D wing, checked for pulse in the neck and ankle, at which time there was no pulse and I/M Wilsons body was warm. LT Welcome, SLT Rispoli, and C/O Layton arrived and took over.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| Jermaine, Wilson | No | Im Hanging |

**Evidence Type:** N/A                                        Date Collected: N/A

**Discovered By :** N/A                          Secured By: N/A

**Type of Force Used:** [ ]  PHYSICAL   [ ]  CHEMICAL [ ]   STUN [ ]   OTHER  [ ]  CAPSTUN [X]   NONE

**Restraints Used     :** N/A

**Immediate Action Taken:**

Notified C/O Phillips of the situation

## Individuals Involved

| Person Code | Name | SBI# | Title |
|---|---|---|---|
| Staff | Michael, Newman K | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Michelle, Phillips | N/A | Correctional Officer |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Jonathan, Barber L | N/A | CO Corporal/Sgt. Small Inst. |
| Staff | Paul, Unsworth | N/A | Correctional Officer |
| Inmate | Jermaine, Wilson | 00456612 | N/A |

**Reporting Officer:** Newman, Michael K (Maintenance Mechanic)    **Entered By:** Newman, Michael K (Maintenance Mechanic)

### Approval Information

[ X ]  Approved  [ ] Disapproved  **Date:** 02/19/2005  Approved by: Burton, Bruce   (Shift Commander - Large Inst.)

**Comments:** N/A

D00384

1020256     Smyrna Landing Road
SMYRNA DE, 19977
Phone#: 302-653-9261

# INCIDENT REPORT

| Group#: N/A | Type: Inmate Involved | Incident Date: 02/18/2004 | Time: 22:42 | Confidential: No |
|---|---|---|---|---|

Facility: DCC  Delaware Correctional Center                                    Followup Required : No

Incident Location: Bldg.18 D Tier

Location Description: DU6

Violated Conditions:

Description of Incident:

On the above date and approximate time I C/O Michelle Phillips was Working C/D pod. I was notified by Officer Mike Newman that I/M in DU6 was hanging in his cell. I immediately notified SGT Carpenter, C/O Unsworth, Jon Barber of incident. I then called LT welcome and told him of the situation. At Approx 2245 LT Welcome, SLT Rispoli, C/O Layton, SGT Stevenson responded. The SHU Nurse responded a short time later, and shortly after that paramedics arrived on the scene.

| Injured Persons | Hospitalized | Nature Of Injuries | |
|---|---|---|---|
| N/A | N/A | N/A | |

Evidence Type: N/A                                              Date Collected: N/A

Discovered By : N/A                                    Secured By: N/A

Type of Force Used: [ ]   PHYSICAL   [ ]   CHEMICAL [ ]   STUN [ ]   OTHER   [ ]   CAPSTUN [X]   NONE

Restraints Used      : N/A

Immediate Action Taken:

Notified Bldg staff, area LT, 404 submitted.

| Individuals Involved | | | |
|---|---|---|---|
| Person Code | Name | SBI# | Title |
| taff | Michelle, Phillips | N/A | Correctional Officer |
| Staff | Michael, Newman K | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Paul, Unsworth | N/A | Correctional Officer |
| Staff | Michael, Welcome | N/A | Staff Lt./Lt |
| Staff | Marcello, Rispoli T | N/A | Staff Lt./Lt |
| Inmate | Jermaine, Wilson | 00456612 | N/A |

Reporting Officer: Phillips, Michelle  (Correctional Officer)        Entered By: Phillips, Michelle  (Correctional Officer)

| Approval Information | | |
|---|---|---|

[ X ]  Approved [ ] Disapproved  Date: 02/19/2005  Approved by: Burton, Bruce   (Shift Commander - Large Inst.)

Comments: N/A

D00388

Smyrna Landing Road
SMYRNA DE 19977
Phone#: 302-653-9261

# INCIDENT REPORT

Group#: 1560    Type: Inmate Involved    Incident Date: 02/18/2005    Time: 22:40    Confidential: No

Facility: DCC Delaware Correctional Center    Followup Required: No
Incident Location: Bldg 18 D Tier
Location Description: Cell DU6
Violated Conditions: Other
Description of Incident:

On the above date and approximate time C/O Michelle Phillips hollered to me, Sgt. Stephanie Carpenter "He's saying somebodys hanging". I called for backup and responded to the scene. Upon arriving at cell 18DU6 I observed through the cell window Inmate Wilson SBI# 00456612 with a bedsheet that was twisted and tied around his neck. Inmate Wilson was in front of his cell wall locker unit unconscious. I ordered the cell door opened. I and Officer Paul Unsworth entered the cell. I lifted Inmate Wilson so Officer Unsworth could remove the noose from around Inmate Wilson's neck. C/O Unsworth, and I layed Inmate Wilson on the floor. I told Officer Unsworth to check for a pulse, and I checked as well. We could find no pulse, but the body was warm and appeared lifeless. Nurse Tracy Holmes arrived and checked for a pulse. She stated she thought there was a feint pulse. I started administering CPR breaths while Nurse Holmes began chest compressions. We continued with resuscitation procedures until paramedics arrived set up thier equipment and took over CPR. They continued resuscitation attempts until Inmate Wilson was pronounced dead by paramedics at 2316. Then all staff and medical members exited the cell and the cell door was secured awaiting arrival of state police officers to investigate the scene. The state police arrived and conducted their investigation, questioned me, questioned my staff. The staff I recall being there were S/Lt. Marcello Rispoli, Lt. Michael Welcome, C/O Paul Unsworth, C/O John Barber, C/O Michael Newman, Nurse Tracy Holmes. At approximately 0330 the medical examiner arrived to transport the body out of the housing unit. I was also interviewed by Ronald Drake of internal affairs, and questioned by the medical examiner. I checked all outgoing mail in search of any mail sent by Inmate Wilson. There was none. During the course of the Shift Inmate Wilson showed no signs of intending to harm or hurt himself, and said nothing to indicate he would do this. He did ask C/O Michael Newman to ask me, Sgt. Carpenter if she knew if he was getting out today like his paperwork stated. I proceeded to call Sgt. Daggy in the recieving room at approximately 2000 hrs., and asked him if he had any record of release for his inmate, and he said no I don't have anything on him, but that doesn't necessarily mean he is not getting out today. I relayed to C/O Michael Newman that I spoke with recieving, and they said that they don't have the paper work right now, but that doesn't mean he's not getting out today, but we would let him know as soon as we heard something about it.

| Injured Persons | Hospitalized | | Nature Of Injuries |
|---|---|---|---|
| N/A | N/A | N/A | |

Evidence Type: N/A    Date Collected: N/A
Discovered By: N/A    Secured By: N/A

Type of Force Used: [ ]  PHYSICAL  [ ]  CHEMICAL [ ]  STUN [ ]  OTHER  [ ]  CAPSTUN [X]  NONE
Restraints Used    : N/A

Immediate Action Taken:
404, notified area Lt., performed CPR, met with I.A., interviewed by state police and medical examiner

| Individuals Involved | | | |
|---|---|---|---|
| Person Code | Name | SBI# | Title |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Tracy, Holmes | N/A | Contractors - Medical |
| Staff | Paul, Unsworth | N/A | Correctional Officer |
| Staff | Michael, Newman K | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Jonathan, Barber L | N/A | CO Corporal/Sgt. Small Inst. |
| Staff | Marcello, Rispoli T | N/A | Staff Lt./Lt |
| Staff | Michael, Welcome | N/A | Staff Lt./Lt |
| aff | Michelle, Phillips | N/A | Correctional Officer |
| mate | Jermaine, Wilson | 00456612 | N/A |

Reporting Officer: Carpenter, Stephanie J (Co Corporal/Sgt. - Large Inst.)    Entered By: Carpenter, Stephanie J (Co Corporal/Sgt. - Large Inst.)

A000204                                              D00382

DCC Delaware Correctional Facility
Smyrna Landing Road
SMYRNA DE 19977
Phone#: 302-653-9261

# INCIDENT REPORT

Incident
102026

| Group#: 1560 | Type: Inmate Involved | Incident Date: 02/18/2005 | Time: 22:40 | Confidential: No |
|---|---|---|---|---|

## Approval Information

| X | Approved | ☐ Disapproved | Date: 02/19/2005 | Approved by: Burton, Bruce   (Shift Commander - Large Inst.) |

Comments: N/A

D00383

1020251                           Smyrna Landing Road
                                  SMYRNA DE. 19977
                                  Phone#: 302-653-9261

## INCIDENT REPORT

Group#: 1560    Type: Inmate Involved    Incident Date: 02/18/2005    Time: 22:45    Confidential: No

Facility: DCC  Delaware Correctional Center                          Followup Required :No
Incident Location: Bldg.18 D Tier
Location Description: bldg 18 d-wing upper.6

Violated Conditions:
Description of Incident:
On this date and time while conducting a count on A wing i was called over to D wing as we have a problem. On arival at d-wing
we did find Inmate Jermaine Wilson SBI #00456612 hanging from his locker I called to the pod and told them to open cell upper 6
sgt carpenter and I entered the cell and took said inmate down and checked for a pulse none was found and at that time medical
did arive and start c.p.r with the help from sgt carpenter

| Injured Persons | Hospitalized | Nature Of Injuries | |
|---|---|---|---|
| N/A | N/A | N/A | |

Evidence Type: N/A                                         Date Collected: N/A
Discovered By : N/A                            Secured By: N/A

Type of Force Used: [] PHYSICAL  [] CHEMICAL [] STUN []. OTHER  [] CAPSTUN [X] NONE
Restraints Used  : N/A
Immediate Action Taken:
404 submitted.

| Individuals Involved | | | |
|---|---|---|---|
| Person Code | Name | SBI# | Title |
| .mate | Jermaine, Wilson | 00456612 | N/A |
| Staff | Paul, Unsworth | N/A | Correctional Officer |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Jonathan, Barber L | N/A | CO Corporal/Sgt. Small Inst. |
| Staff | Michael, Newman K | N/A | CO Corporal/Sgt. - Large Inst. |

Reporting Officer: Unsworth, Paul  (Correctional Officer)    Entered By: Unsworth, Paul  (Correctional Officer)

### Approval Information

[ X ] Approved  [ ] Disapproved  Date: 02/19/2005  Approved by: Burton, Bruce   (Shift Commander - Large Inst.)
Comments: N/A

D00385

11020254                                    Smyrna Landing Road
                                            SMYRNA DE, 19977
                                        Phone#: 302-653-9261

# INCIDENT REPORT

| | | | | | | |
|---|---|---|---|---|---|---|
| Group#: 1560 | **Type:** Inmate Involved | | **Incident Date:** 02/18/2005 | **Time:** 22:42 | **Confidential:** No | |

**Facility:** DCC  Delaware Correctional Center                          Followup Required : No
**Incident Location:** Bldg.18 D Tier
**Location Description:** DU6
**Violated Conditions:**
**Description of Incident:**
On the above date and approximate time while doing a head count and phone punch on B tier I, Jon Barber, was called over to D tier for an emergency. C/O Unsworth, SGT Carpenter, Mike Newman  was at the cell of DU6, C/O Phillips (pod officer) was ordered to open DU6. Upon entering the cell found I/M Wilson, Jermaine (SBI456612) hanging from wall locker. C/O Unsworth removed sheet from around IM's neck. Unsworth, and Sgt Carpenter laid I/M wilson on floor and checked for a pulse. At this time there was no pulse. The SHU Nurse arrived, and began CPR with Sgt. Carpenter until paramedics arrived.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| Jermaine, Wilson | No | I/M Hanging |

**Evidence Type:** N/A                                        Date Collected: N/A
**Discovered By :** N/A                        **Secured By:** N/A

**Type of Force Used:** [ ]  PHYSICAL  [ ]   CHEMICAL [ ]   STUN [ ]   OTHER   [ ]   CAPSTUN [X]   NONE
**Restraints Used    :** N/A
**Immediate Action Taken:**
Responded to emergency on D tier

### Individuals Involved

| Person Code | Name | SBI# | Title |
|---|---|---|---|
| Staff | Jonathan, Barber L | N/A | CO Corporal/Sgt. Small Inst. |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Paul, Unsworth | N/A | Correctional Officer |
| Staff | Michael, Newman K | N/A | CO Corporal/Sgt. - Large Inst. |
| Inmate | Jermaine, Wilson | 00456612 | N/A |

**Reporting Officer:** Barber, Jonathan L (Pi Supervisor)          **Entered By:** Barber, Jonathan L (Pi Supervisor)

### Approval Information

[ X ]  Approved  [ ] Disapproved  Date: 02/19/2005  Approved by: Burton, Bruce   (Shift Commander - Large Inst.)
**Comments:** N/A

D00386

10202058 the Landing Road                    Smyrna Landing Road
                                              SMYRNA DE: 19977
                                           Phone#: 302-653-9261

# INCIDENT REPORT

| Group#: 1560 | Type: Inmate Involved | Incident Date: 02/18/2005 | Time: 22:45 | Confidential: No |

Facility: DCC  Delaware Correctional Center                          Followup Required :No

Incident Location: Bldg.18 D Tier

Location Description: cell DU6

Violated Conditions: Other

Description of Incident:

On the above date and approximate time I, Lt. Michael Welcome, was conducting an area check of building 17. I was notified by SHU 17 staff that they had a medical emergency in SHU 18. I called a Code 4 to primary, and immediately headed for SHU 18 with Sgt. Mathew Stevenson. As I passed S/Lt. Rispoli's office I advised him we had an emergency in SHU 18, and he accompanied us to the unit. Upon arrival at SHU 18 cell DU6 I observed Inmate Jermaine Wilson SBI # 00456612 laying on the floor with a small amount of blood on the floor that appeared to be coming from the back of his head area. I observed what appeared to be a white sheet wound loosely hanging in the cell locker. Sgt. Stevenson radioed a code 7 on the radio, and primary was notified to call 911. I observed the following staff present C/O Paul Unsworth, Maintenance C/O Michael Newman, and Sgt. Stephanie Carpenter. DCC medical Nurse Tracy Holmes arrived on the scene, and started CPR with Sgt. Carpenter. CPR was continued until the following paramedic staff arrived at approximately 2305 hrs. and took over (Mike Shelf, Gene Forest, Joe Forest, Chuck Ware, Jason McDonald, and Dave Phillips.) Paramedics continued CPR and attached a portable defibrillator and heart monitoring device. They continued resucitation attempts until 2316 hrs. when Inmate Jermaine Wilson was pronounced dead. S/Lt. Marcello Rispoli photographed the scene with a digital camera. Inmate Jermaine Wilson remained in the cell until Delaware State Police arrived to investigate. DSP Sgt. John Penwood arrived at approximately 2315 hrs. He stood on the tier with me awaiting another investigator. At approximately 2345 hours I went to SHU 20 and briefed Lt. John Barlow(the 12-8 SHU Lt.) on what happened, and that Inmate Wilson was not to be moved until DSP completed thier investigation, and then that he was to be moved by medical staff per Deputy Warden Betty Burris. It should also be noted that while I was on D tier with the State trooper I made one phone punch that took me approximately 5 minutes to successfully get through, and secondary attempts approximately 20 minutes later resulted in repeated ringing of the phone punch station without successfully geting the recording system to answer even after repeated attempts. While paramedics were attempting resuscitation efforts I relayed information from the scene via telephone to Deputy Warden Betty Burris. After paramedics exited the cell it was secured as a crime scene awaiting Delaware State Police.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| N/A | N/A | N/A |

Evidence Type: N/A                                          Date Collected: N/A

Discovered By :N/A                              Secured By:N/A

Type of Force Used: [] PHYSICAL  [] CHEMICAL [] STUN [] OTHER [] CAPSTUN [X] NONE

Restraints Used    : N/A

Immediate Action Taken:

404 submitted, called a code to primary control, notified unit manager Rispoli, notified Shift Commander, directed all staff prese to submit 404's, notified Deputy Warden Betty Burris

## Individuals Involved

| Person Code | Name | SBI# | Title |
|---|---|---|---|
| Staff | Michael, Welcome | N/A | Staff Lt./Lt |
| Inmate | Jermaine, Wilson | 00456612 | N/A |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Tracy, Holmes | N/A | Contractors - Medical |
| Staff | Mathew, Stevenson | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Michael, Newman K | N/A | CO Corporal/Sgt. - Large Inst. |
| aff | Paul, Unsworth | N/A | Correctional Officer |
| aff | Marcello, Rispoli T | N/A | Staff Lt./Lt |

Reporting Officer: Welcome, Michael  (Staff Lt./Lt)        Entered By: Welcome, Michael  (Staff Lt./Lt)

D00378

1020258                          Smyrna Landing Road
                                  SMYRNA DE, 19977
                               Phone#: 302-653-9261
                              **INCIDENT REPORT**

| Group#: 1560 | Type: Inmate Involved | Incident Date: 02/18/2005 | Time: 22:45 | Confidential: No |

**Approval Information**

[ X ] Approved  [ ] Disapproved  Date: 02/19/2005  Approved by: Burton, Bruce  (Shift Commander - Large Inst.)

Comments: N/A

A000209

D00379

1020265                                          **Smyrna Landing Road**
                                                 **SMYRNA DE, 19977**
                                                 **Phone#: 302-653-9261**
                                                 **INCIDENT REPORT**

Group#: 1560    Type: Inmate Involved        Incident Date: 02/18/2005   Time: 22:45   Confidential: No

Facility: DCC  Delaware Correctional Center                           Followup Required :No
Incident Location: Bldg. 18 D Tier
Location Description: cell DU6

Violated Conditions:

Description of Incident:
On Feb 18, 2005 at approx 2245, I (Sgt Matt Stevenson) responded from Bldg 17 to a Code 7 in Bldg 18 with Lt Welcome. Upon arriving to Bldg 18 we responded to DU6, where I/M Jermaine Wilson #00456612 had hung himself from his wall locker with a sheet. Sgt Stephanie Carpentar and C/O Paul Unsworth were already in the cell. C/O Unsworth had untied the sheet and had I/M Wilson layed onto the floor. Sgt Carpentar checked for a pulse and was unable to find one. I then notified Unit 7 (Capt Scarborough) that there was a Code 7 in Bldg 18 and we were going to need a digital camera. I then sent Sgt Beckles to the shift commanders office to retrieve the camera for S/Lt Rispoli. I then proceeded to get medical (Nurse Tracey Holmes) and responded back to the cell. Once medical arrived, Nurse Holmes did a quick assessment and CPR was started with Sgt Carpentar giving mouth to mouth and Nurse Holmes doing chest compressions. I stayed on scene to relieve either one until paramedics could arrive. At 2303, Kent County Paramedics arrived on scene and took over resuscitation. At 2308 EMS arrived on scene as well. All attempts to save I/M Wilson life failed and Kent County Paramedics notified security staff present that time of death was called at 2316 hrs. Delaware State Police arrived 2318 hrs and the cell was secured.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| N/A | N/A | N/A |

Evidence Type: N/A                                        Date Collected: N/A
Discovered By :N/A                          Secured By: N/A

Type of Force Used: [] PHYSICAL  [] CHEMICAL []  STUN []  OTHER []  CAPSTUN [X] NONE
Restraints Used   : N/A
Immediate Action Taken:
CPR given, 404 submitted

**Individuals Involved**

| Person Code | Name | SBI# | Title |
|---|---|---|---|
| Staff | Mathew, Stevenson | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Michael, Welcome | N/A | Staff Lt./Lt |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Paul, Unsworth | N/A | Correctional Officer |
| Inmate | Jermaine, Wilson | 00456612 | N/A |

Reporting Officer: Stevenson, Mathew (Co Corporal/Sgt. - Large   Entered By: Stevenson, Mathew (Co Corporal/Sgt. - Large
Inst.)                                                        Inst.)

**Approval Information**

[X] Approved [] Disapproved Date: 02/19/2005 Approved by: Burton, Bruce  (Shift Commander - Large Inst.)
Comments: N/A

D00387

1020260          Smyrna Landing Road
SMYRNA DE, 19977
Phone#: 302-653-9261

## INCIDENT REPORT

Group#: 1560    Type: Inmate Involved      Incident Date: 02/18/2005    Time: 22:45    Confidential: No

Facility: DCC  Delaware Correctional Center                      Followup Required :No

Incident Location: Bldg.18 D Tier

Location Description:

Violated Conditions:

Description of Incident:

On 2/18/05 at approx. 2245 in bldg #20 Captains office Lt. Welcome reported to me (Rispoli) that there is a hanging in #18. Welcome Sgt. Stevenson, and I reported directly to #18 DU6 where I observed I/M Wilson lying on his back on the floor. There was a small amount of blood on the floor and on the wall locker which came from the back of I/M Wilsons head. Sgt. Carpenter, C/O Newman, C/O Unsworth were already on the scene before I had arrived. Carpenter, Unsworth, and Newman reported that they found I/M Wilson hanging from a bed sheet. Bed sheet tied to the top of the inside of the wall locker. Carpenter and Unsworth reported that they untied I/M Wilson and lowered him to the floor. I checked I/M Wilson for a pulse. I observed Wilson open and then close his eyes slowly but he never answered me. Nurse Tracy Holmes was on the scene. Nurse Holmes and Sgt Carpenter administered CPR until the paramedics arrived. Paramedics informed me at 2316 that I/M Wilson was D.O.A. DSP Ray Peden and John Penrod arrived on scene and ordered that I/M Wilson remain in DU6 until the DSP evidence technitians and medical examiners office arrived. D/W David Pierce, Capt. James Scarborough, and I.I. Ron Drake on the scene. Medical Examiners office (John D. Turner) and DSP departed with I/M Wilson at approx. 0255 on 2/19/05. I had taken several photo's of the scene. #18 C and D tiers log book turned over to I.I. Drake.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| N/A | N/A | N/A |

Evidence Type: N/A                                    Date Collected: N/A

Discovered By : N/A                          Secured By: N/A

Type of Force Used: [ ]    PHYSICAL    [ ]    CHEMICAL [ ]    STUN   [ ]    OTHER    [ ]    CAPSTUN [X]    NONE

Restraints Used    : N/A

Immediate Action Taken:
N/A

| Individuals Involved | | | |
|---|---|---|---|
| Person Code | Name | SBI# | Title |
| Staff | Marcello, Rispoli T | N/A | Staff Lt./Lt |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Michael, Welcome | N/A | Staff Lt./Lt |
| Staff | Paul, Unsworth | N/A | Correctional Officer |
| Staff | Michelle, Phillips | N/A | Correctional Officer |
| Staff | James, Scarborough | N/A | Shift Commander - Large Inst. |
| Staff | Mathew, Stevenson | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Wilfred, Beckles | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Michael, Newman K | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Jonathan, Barber L | N/A | CO Corporal/Sgt. Small Inst. |
| Staff | Donald, Layton W Jr. | N/A | Correctional Officer |
| Staff | Tracy, Holmes | N/A | Contractors - Medical |
| Staff | Ronnie, Drake E | N/A | Internal Affairs |
| Staff | David, Pierce E Jr. | N/A | Level 5/ Warden/Deputy |

Reporting Officer: Rispoli, Marcello T (Staff Lt./Lt)          Entered By: Rispoli, Marcello T (Staff Lt./Lt)

A000211

D00380

1020260     Landing Road

**Smyrna Landing Road**
**SMYRNA DE, 19977**
Phone#: 302-653-9261

## INCIDENT REPORT

| Group#: 1560 | Type: Inmate Involved | Incident Date: 02/18/2005 | Time: 22:45 | Confidential: No |

### Approval Information

[X] Approved   [ ] Disapproved   Date: 02/19/2005   Approved by: Burton, Bruce  (Shift Commander - Large Inst.)
Comments: N/A

A000212

D00381

~~1020257 14 Landing Road~~    Smyrna Landing Road
SMYRNA DE. 19977
Phone#: 302-653-9261

# INCIDENT REPORT

| Group#: 1560 | Type: Inmate Involved | Incident Date: 02/18/2005 | Time: 22:42 | Confidential: No |

Facility: DCC  Delaware Correctional Center                    Followup Required : No
Incident Location: Bldg.18 D Tier
Location Description: D upper 6, single

Violated Conditions: Other
Description of Incident:
On the above date, time and place I, Captain Scarborough, heard a Code 4 being called via radio. Soon afterwards I recieved a phone call from Lt Welcome who stated I/M Jermaine Wilson #456612 hung himself and he advised that 9-11 should be called. I immediately ordered primary control to call 9-11. At 22:45 hours the Code 4 was upgraded to Code 7. At about 22:50 hours I recieved a phone call from Sgt Stephanie Carpenter who stated she believed the inmate has died because he has no vital signs. She stated medical is still doing CPR. I then Contacted Deputy Warden Burris and briefed her on the information that was presented to me. At about 2300 Mr. Ronald Drake, Deputy Warden Pierce, and Major Cunningham had been contacted. Primary Control had been instructed to contact Major Holman via pager. I then went to the SHU. Paramedics were performing CPR. The Nurse was standing outside the cell. Staff Lieutenant Rispoli briefed me. Lt Welcome was outside the control room briefing Deputy Warden Burris via telephone. I went inside the control room to look at the log book. There appeared to be great detail in regards to making phone punches and the technical trouble they were having with some of the punches. At 23:16 hours medical personel pronounced I/M Wilson dead. I then went to primary control and at 23:28 hours I ordered primary control to call 10-1. At 00:10 on 02/19/05 Mr. Ronald Drake entered the Shift Commanders office and was briefed by me. At 00:12 Mr. Ronald Drake was 10-69 SHU-18. At 0041 Deputy Warden Pierce arrived at D.C.C. I met Deputy Warden Pierce between building 12 and 13. I briefed him as we walked to SHU-18. I was later directed to go to the shift commanders office and have Captain Burton coordinate all reports and get copies to DSP in SHU as soon as possible. This was done.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| N/A | N/A | N/A |

Evidence Type: N/A                                        Date Collected: N/A
Discovered By : N/A                        Secured By: N/A

Type of Force Used: [ ]  PHYSICAL  [ ]  CHEMICAL [ ]  STUN [ ]  OTHER  [ ]  CAPSTUN  [X]  NONE
Restraints Used    : N/A
Immediate Action Taken:
N/A

## Individuals Involved

| Person Code | Name | SBI# | Title |
|---|---|---|---|
| Staff | James, Scarborough | N/A | Shift Commander - Large Inst. |
| Staff | Marcello, Rispoli T | N/A | Staff Lt./Lt |
| Staff | Michael, Welcome | N/A | Staff Lt./Lt |
| Staff | Stephanie, Carpenter J | N/A | CO Corporal/Sgt. - Large Inst. |

Reporting Officer: Scarborough, James  (Shift Commander - Larg Inst.)    Entered By: Scarborough, James  (Shift Commander - Larg Inst.)

## Approval Information

[X] Approved  [ ] Disapproved  Date: 02/19/2005  Approved by: Burton, Bruce   (Shift Commander - Large Inst.)
Comments: N/A

D00377

Pages A000214 thru A000231

CONFIDENTIAL MEDICAL RECORDS

| Page: 1 | Report Date: 02/19/2005 | Agency: TROOP 2 STATE POLICE | | Complaint: 09-05-018306 |
|---|---|---|---|---|
| Reported Date and Time FRI 02/18/2005 2252 | | Initial Crime Report | | Occurred: FRI 02/18/2005 2215 thru 2245 |

**Location:**
867  Smyrna Landing RD      Smyrna, DE 19977
**DELAWARE CORRECTIONAL CENTER**

**M.O. and Incident Overview:**
VICTIM COMMITTED SUICIDE BY HANGING HIMSELF WITH A SHEET THAT HE HAD TIED TO HIS LOCKER.

| Grid 092-256 | Sector 92 | County New Castle | Domestic Related □Yes ☒No | 4-F-14 Sent? □Yes ☒No | Gen Broadcast Sent? □Yes ☒No |
|---|---|---|---|---|---|

## Victim Information

| Victim Number 001 | Name WILSON, JERMAINE | | | | | |
|---|---|---|---|---|---|---|
| Type Individual | Sex Male | Race Black | | Ethnic Origin Non-Hispanic | Age 20 | D.O.B. 01/15/1985 |

**Address**
867 Smyrna Landing RD
**DELAWARE CORRECTIONAL CENTER**
Smyrna, DE 19977

| | Resident Status Full Time | Home Telephone | Cell Phone |
|---|---|---|---|

| Reporting Person? □Yes ☒No | Victim Injured? □Yes ☒No | Victim Deceased? ☒Yes □No | Officer Comments |
|---|---|---|---|
| Injuries | | Description of Injuries | |

## Crimes and Associated Information

| Victim Number 001 | Crime Seq 001 | Statute | Crime Description Death Investigation--No Specific Charges Associated |
|---|---|---|---|
| Location Of Offense Jail/Penitentiary | | Status Pending-Active | Involvement □Alcohol □Drugs □Computer    General Offense |
| Suspected Hate/Bias □Yes ☒No - N/A | | Crime Code 8104 – Sudden Death/Death Investigation | |
| Burglary Force Involved □Yes □No | | | |

## Investigative Narrative

ON 02-18-05 I WAS CONTACTED BY SGT SUSAN JONES TO RESPOND TO THE DELAWARE CORRECTIONAL CENTER REFERENCE A SUICIDE.

UPON MY ARRIVAL I CAME IN CONTACT WITH SGT PEDEN AND CPL PENROD. I WAS ADVISED THAT CORRECTIONS OFFICER NEWMAN DISCOVERED THE VICTIM AT APPROX 2245 HOURS AS HE WAS PERFORMING HIS CELL CHECK. IT APPEARS THAT THE VICTIM TOOK A BED SHEET AND TIED IT AROUND A POLE  BAR IN HIS CLOTHES LOCKER. HE THEN PROCEEDED TO TIE THE SHEET INTO A KNOT AROUND HIS NECK.  THE VICTIM THEN SQUATTED DOWN AND CUT OFF HIS AIRWAY. IT APPEARS THAT THE VICTIM THEN DIED OF ASPHYXIATION.

I WAS ADVISED THAT FOUR OFFICERS HAD RESPONDED TO THE CELL, ONCE THE VICTIM WAS SEEN WITH THE SHEET AROUND HIS NECK. THE DOOR WAS NOT OPENED UNTIL SEVERAL OFFICERS WERE PRESENT. SGT CARPENTER AND C/O UNSWORTH WERE THE TWO OFFICERS  WHO RESPONDED INTO THE CELL. C/O UNSWORTH REMOVED THE SHEET FROM THE VICTIM'S NECK IN ORDER TO LAY HIM IN A PRONE POSITION TO PERFORM CPR. ONCE THE SHEET WAS REMOVED, THEY DRAGGED THE VICTIM TO THE CENTER OF THE ROOM AND SGT CARPENTER  BEGAN ONE PERSON CPR. C/O NEWMAN AND C/O BARBER WERE STANDING OUTSIDE OF THE DOOR CELL AREA. THE CELL AREA WAS SMALL SO THEY REMAINED OUTSIDE THE CELL. ONE PERSON CPR WAS PERFORMED ON THE VICTIM UNTIL TRACEY HOLMES LPN RESPONDED AND ASSISTED WITH  CPR. NO PULSE WAS EVER DETECTED. MEDIC STATION 3 RESPONDED TO THE CELL AND PRONOUNCED THE VICTIM AS DECEASED AT 2316 HOURS.

D00316

| Reporting Officer DET. BARTKOWSKI  - 4897 1 | Supervisor Approval JOHN M MAHER  PSPT612  Date 03/07/2005 1354 |
|---|---|

A000232

| Page: 2 | Report Date: 02/19/2005 | Agency: TROOP 2 STATE POLICE | Complaint: 09-05-018306 |
|---|---|---|---|

Investigative Narrative - Continued

I CONTACTED C/O NEWMAN WHO ADVISED THAT HE HAD PERFORMED A CHECK ON THE VICTIM'S CELL #D6U AT APPROX 2215 HOURS. HE MADE VERBAL CONTACT WITH THE VICTIM THROUGH THE CELL DOOR. THE VICTIM HELD UP A PIECE OF PAPER AND PRESSED IT AGAINST THE GLASS WINDOW. HE HAD WRITTEN A LETTER STATING THAT HE WAS SUPPOSE TO BE RELEASED THE 18TH. HE WANTED SOMEONE TO CHECK THE COMPUTER TO SEE WHY HE HAD NOT BEEN TRANSFERRED OUT. C/O NEWMAN STATED THAT AT NO TIME DID THE VICTIM THREATEN TO HURT HIMSELF OR. AS FAR AS HE WAS CONCERNED, THE VICTIM WAS WORKING ON GETTING RELEASED. WHEN HE PERFORMED THE NEXT CELL CHECK AT APPROX 2245 HOURS, THAT WAS WHEN HE SAW THE VICTIM IN A SQUATTING POSITION BY HIS LOCKER WITH A SHEET AROUND HIS NECK. HE IMMEDIATELY CONTACTED THE CONTROL ROOM AND NOTIFIED THEM OF A CODE 7. AT THIS POINT THE CONTROL ROOM DISPATCHED THE CODE 7 AND OTHER OFFICERS RESPONDED TO THE SCENE. C/O NEWMAN ADVISED THAT THE LIGHTS ARE CONTROLLED BY THE PRISON AND THEY REMAIN ON UNTIL THEY ARE TURNED OFF AT 2330 HOURS.

I CONTACTED C/O UNSWORTH, C/O BARBER AND SGT CARPENTER AT THE SCENE. THE FACTS OF THEIR STATEMENTS MATCH WITH WHAT I WAS ADVISED UPON MY ARRIVAL. I CONTACTED LPN HOLMES AT HER OFFICE. SHE CHECKED THE VICTIM'S RECORDS TO CHECK HIS MENTAL HEALTH STATUS. THERE WAS NO EVIDENCE THAT THE VICTIM WAS SUFFERING FROM ANY TYPE OF DEPRESSION OR EVER THREATENED SELF HARM. THE VICTIM WAS NOT TAKING ANY MEDICATION.

I EXAMINED THE CELL AREA WITH DET CHAPMAN. THERE WAS BLOOD NOTED ON THE FIRST SHELF OF THE LOCKER, LOCATED TO THE RIGHT OF THE LOCKER'S METAL LATCH. THERE WERE SEVERAL BLOOD SPOTS ON THE FLOOR. THE SHEET WAS STILL TIED TO THE POLE BAR IN THE CLOSET BUT THE SHEET HAD BEEN UNTIED FROM THE VICTIM'S NECK. NEXT TO THE CELL DOOR, A LETTER THAT THE VICTIM HAD WRITTEN WAS FOUND ON A SHELF. THE LETTER WAS REQUESTING FOR SOMEONE TO CHECK THE COMPUTER ABOUT HIS RELEASE DATE.

I CONTACTED DEPUTY WARDEN PIERCE AT THE SCENE. HE ADVISED THAT THE VICTIM HAD BEEN SENT TO THEIR FACILITY ON 01-25-05 FOR VIOLATION OF PROBATION. RECORDS REVEALED THAT HE WAS BEING HELD ON AN ADMINISTRATIVE WARRANT AND THAT THERE WAS NO ASSIGNED RELEASE DATE. PC PIERCE MADE NOTIFICATION TO THE VICTIM'S MOTHER, SUSIE WILSON 286-0757. SHE ADVISED HIM THAT SHE RECEIVED A LETTER FROM HER SON DATED THE 25TH OF JANUARY WHICH ADVISED HER TO RESPOND TO THE PRISON ON 02-18-05 AT 1201 HOURS TO PICK HIM UP. SHE RESPONDED TO THE PRISON ON THE 18TH BUT HER SON WAS NOT RELEASED. SHE COULD OFFER NO REASON WHY THE VICTIM WOULD HAVE COMMITTED SUICIDE.

D00317

~AME IN CONTACT WITH RON DRAKE, THE INSTITUTIONAL INVESTIGATOR. HE ADVISED THAT THE PRISON
⅃ D BE TAKING STATEMENTS FROM EACH OF THE OFFICERS AND THEY WOULD BE CONDUCTING THEIR OWN
INTERNAL INVESTIGATION. COPIES OF THE INCIDENT REPORTS COMPLETED BY THE OFFICERS WERE

| Reporting Officer DET. BARTKOWSKI  - 4897 1 | Supervisor Approval JOHN M MAHER PSPT612 Date 03/07/2005 1354 |
|---|---|

A000233

| Page: 3 | Report Date: 02/19/2005 | Agency: TROOP 2 STATE POLICE | Complaint: 09-05-018306 |
|---|---|---|---|

## Investigative Narrative - Continued

FORWARDED TO MYSELF. THE STATEMENTS ARE CONSISTENT WITH WHAT I WAS ADVISED AT THE SCENE.

THE MEDICAL EXAMINER RESPONDED TO THE SCENE AND TOOK CUSTODY OF THE VICTIM'S BODY.

THIS INVESTIGATION WILL BE PENDING ACTIVE, AWAITING FOR REPORTS FROM THE ME'S OFFICE.

D00318

| orting Officer . BARTKOWSKI - 4897 1 | | Supervisor Approval JOHN M MAHER PSPT612 Date 03/07/2005 1354 | | |
|---|---|---|---|---|
| ctive Notified | | Referred To | | |
| Solvability Factors | ☐ Witness ☐ Suspect Located | ☐ M. O. ☐ Suspect Described | ☐ Trace Stolen Property ☐ Suspect Identified | ☐ Suspect Named ☐ Suspect Vehicle Identified | Status Has Follow Up |

| Page: 1 | Report Date: 02/21/2005 | Agency: TROOP 2 STATE POLICE | Complaint: 09-05-018306 |
|---|---|---|---|

## Supplemental Report

| Original Occurrence Dates and Times: FRI 02/18/2005 2215 thru 2245 | Grid 092-256 | Sector 92 |
|---|---|---|

Original Location:
867  Smyrna Landing RD     Smyrna, DE 19977
DELAWARE CORRECTIONAL CENTER

---

### Investigative Narrative

Evidence Report: #05-098.


Investigating Officer: Det. M. Bartkowski 4897.


Examination Requested:  Photographs and Collection Of Evidence.


On Saturday, February 19, 2005 at approximately 0047 hrs. I arrived at the Delaware Correctional Center, 867 Smyrna Landing RD, in reference to a death investigation. Upon arrival, I was escorted to the "D" Wing second tier cell #6 of Building #18.  There,  I was advised that the victim apparently hung himself by the neck with a bed sheet on a support bar inside his closet.  Prior to my arrival, the make shift noose had been untied and the victim removed from the closet to better facilitate life saving measures.


Photographs:  I took (24) 35mm and (9) polaroid pohtogaphs of the scene.  The photographs picted both the victim and the scene as observed upon my arrival.  The film was forwarded to ..e photo-lab for processing  via departmental mail.  The polaroid photographs along with a copy of this supplemental report were tuned  over to the investigating officer.


Collection Of Evidence:  I collected the following items from the scene. The items were transported to DSP Troop 2 and placed into the E.C.C.


(1) Bed sheet. Control #02-7456.


(2) Folders w/miscellaneous papers. #02-7457.


(1) Hand written letter. Control #02-7458.


Evidence Report: #05-099.


Autopsy.


.e & Time: Saturday, February 19, 2005 1030 hrs. 1147 hrs.                 D00319

| Reporting Officer CPL/3 CHAPMAN  - 47122 001 | Supervisor Approval SCOTT M GALBREATH PSPT656 Date 02/25/2005 1634 |
|---|---|

A000235

| Page: 2 | Report Date: 02/21/2005 | Agency: TROOP 2 STATE POLICE | | Complaint: 09-05-018306 |
|---|---|---|---|---|

Investigative Narrative - Continued

edical Examiner: Dr. Richard Callery c/o Medical Examiners Office, 200 South Adams Street Wilmington, DE (302) 577-3420.


Victim: Wilson, Jermaine BMNH 01/15/1985.


Medical Examiner Case: #05-222.


Date Of Death: 18 February 2005.


Date of Examination: 19 February 2005.


Cause Of Death: Hanging.


Manner Of Death: Suicide.


oxicology: Pending


Photographs: None.


Spooned impressions: I obntained one set of spooned impressions from the victim.  The impressions were forwarded to S.B.I. for further examination.


Funeral Home: House of Wright.

D00320

| orting Officer L/3 CHAPMAN  - 47122 001 | | | Supervisor Approval SCOTT M GALBREATH  PSPT656 Date 02/25/2005 1634 | | |
|---|---|---|---|---|---|
| ..ability Factors | ☐ Witness ☐ Suspect Located | ☐ M. O. ☐ Suspect Described | ☐ Trace Stolen Property ☐ Suspect Identified | ☐ Suspect Named ☐ Suspect Vehicle Described | Status Has Follow Up |

| Page: 1 | Report Date: 03/01/2005 | Agency: Troop 9 State Police | Complaint: 09-05-018306 |
|---|---|---|---|

## Supplemental Report

| riginal Occurrence Dates and Times: FRI 02/18/2005 2215 thru 2245 | | Grid 092-256 | Sector 92 |
|---|---|---|---|

Original Location:
867  Smyrna Landing RD    Smyrna, DE 19977
DELAWARE CORRECTIONAL CENTER

---

## Investigative Narrative

ORIGINAL INVESTIGATOR: DETECTIVE BARTKOWSKI, DSP 2 CIU

On Fr 02182005 approx 2300 hrs I was dispatched to the De Correctional Center (867 Smyrna Landing Road, Smyrna De) reference a suicide in progress. I was assisted by Sgt. R. Peden (2106). Upon arrival I was escorted to the maximum security wing. upon arrival on the wing I was advised by staff (Sgt. Stephanie Carpenter, DOC) that the inmate was pronounced dead by medics (Medic Station 3) via Kent County Hospital. Sgt. Peden responded to the wing's second floor where the victim (Inmate Jermaine Wilson) remained. Sgt. Carpenter advised she was the first officer inside the cell once the V-Wilson was discovered. Sgt. Carpenter advised the victim had tied a bed sheet around his neck which blocked his air supply. Sgt. Carpenter advised she immediately began CPR. Sgt. Carpenter was assisted by Correctional Officer Paul nsworth (present). C/O Unsworth advised he accompanied Sgt. Carpenter into the cell and moved the bed sheet from V-Wilson's neck prior to the onset of CPR.

All staff were advised to remain on scene. The cell door was secured. No formal interviews were conducted. I was advised to respond to the second floor reference securing the wing for detectives.

Investigation T.O.T. Detective M. Bartkowski, DSP-2 CIU.

D00321

| orting Officer . PENROD  - 2732 002 | | Supervisor Approval DENNIS M SPILLAN PSPT770 Date 04/03/2005 0950 | | |
|---|---|---|---|---|
| bility Factors | ☐ Witness ☐ Suspect Located | ☐ M. O. ☐ Suspect Described | ☐ Trace Stolen Property ☐ Suspect Identified | ☐ Suspect Named ☐ Suspect Vehicle Described | Status Has Follow Up |

| Page: 1 | Report Date: 04/07/2005 | Agency: TROOP 2 STATE POLICE | | Complaint: 09-05-018306 |

## Supplemental Report

| Original Occurrence Dates and Times: FRI 02/18/2005 2215 thru 2245 | Grid 092-256 | Sector 92 |

Original Location:
867 Smyrna Landing RD    Smyrna, DE 19977
DELAWARE CORRECTIONAL CENTER

## Crimes and Associated Information

| Victim Number 001 | Crime Seq 001 | Statute | Crime Description Death Investigation--No Specific Charges Associated |
| Location Of Offense Jail/Penitentiary | | Status Service Clear 03/21/2005 | Involvement ☐Alcohol ☐Drugs ☐Computer | General Offense |
| Suspected Hate/Bias ☐Yes ☒No - N/A | Crime Code 8104 - Sudden Death/Death Investigation | | |
| Burglary Force Involved ☐Yes ☐No | | | |

## Investigative Narrative

I RECEIVED COPIES OF THE VICTIM'S DEATH CERTIFICATE AND TOXICOLOGY REPORT FROM THE ME'S OFFICE. THE VICTIM'S CAUSE OF DEATH WAS ASPHYXIA DUE TO HANGING. THE TOXICOLOGY REPORT SHOWED NO SIGNS OF DRUGS OR ALCOHOL.

THE STATUS OF THIS INVESTIGATION IS SERVICE CLEAR.

D00322

| Reporting Officer . BARTKOWSKI - 48972 003 | Supervisor Approval JOHN M MAHER PSPT612 Date 04/08/2005 0936 |
| Solvability Factors ☐Witness ☐Suspect Located | ☐M. O. ☐Suspect Described | ☐Trace Stolen Property ☐Suspect Identified | ☐Suspect Named ☐Suspect Vehicle Described | Status Closed |

| Page: 1 | Report Date: 02/08/2006 | Agency: TROOP 2 STATE POLICE | Complaint: 09-05-018306 |
|---|---|---|---|

## Supplemental Report

| Original Occurrence Dates and Times: /RI 02/18/2005 2215 thru 2245 | | Grid 092-256 | Sector 92 |
|---|---|---|---|

Original Location:
867  Smyrna Landing RD     Smyrna, DE 19977
DELAWARE CORRECTIONAL CENTER

## Investigative Narrative

EVIDENCE LOGGED UNDER CONTROL NUMBERS 0200007456, 0200007457 AND 0200007458 MUST BE RETAINED DUE TO ONGOING INVESTIGATION.

D00323

| rting Officer ". BARTKOWSKI  - 48972 004 | Supervisor Approval JOHN M MAHER  PSPT612  Date 02/09/2006 1405 | | | |
|---|---|---|---|---|
| ility Factors | ☐Witness ☐Suspect Located | ☐M. O. ☐Suspect Described | ☐Trace Stolen Property ☐Suspect Identified | ☐Suspect Named ☐Suspect Vehicle Described | Status Closed |

A000239

Page A000240

CONFIDENTIAL MEDICAL RECORD



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE INSTITUTIONAL INVESTIGATOR**
**DELAWARE CORRECTIONAL CENTER**
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax (302) 653-2855

RECEIVED

MAR 2 1 2005

DCC Warden's Office

Ron B. Drake
Investigator

## MEMORANDUM

TO:       Thomas L. Carroll, Warden

FROM:     Ron Drake, Investigator

DATE:     March 21, 2005

RE:       Death of Inmate Jermaine Wilson #456612

## SYNOPSIS:

Captain James Scarborough telephoned Writer at home on Friday, February 18th, 2005 at approximately 2300 hours and stated that Inmate Jermaine Wilson had hanged himself in the Security Housing Unit, Building #18. Captain Scarborough said the inmate did not appear to have any vital signs and is believe to have died. Writer responded to D.C.C., arriving at 0001hours on Saturday, February 19th, 2005. Writer obtained necessary equipment to conduct an investigation and was then briefed by Capt. Scarborough in the shift commander's office. Captain Scarborough advised Writer that Delaware State Police were already on the scene in Building #18. Writer proceeded to Building #18, "D" tier where Delaware State Police officers, Sgt.. Raymond Peden and Cpl. John Penrod were standing by. Sgt. Peden informed Writer that they were securing the scene and awaiting Detective Mary Bartkowski and Detective William Chapman's arrival. Writer briefly spoke to Detectives Bartkowski and Chapman when they arrived. Detective Bartkowski advised Writer she was not going to conduct formal tape recorded interviews of correctional officers. Writer responded to Cell "D", Upper #6 with Detective Chapman. When the door to the cell was opened Writer observed Inmate Wilson laying face up in the floor with his feet approximately thirty inches from the cell door. Inmate Wilson was attired in his orange jumpsuit, opened at the top. Inmate Wilson was also wearing a white T-shirt that had been cut open by the paramedics according to officer witnesses. Inmate Wilson had a black boot on his right foot and his left foot was bare. The left boot and sock was lying next to his left leg. Writer also observed what appeared to be a bed sheet hanging inside of the wall locker that appeared to be tied by some method inside the upper portion of the locker.

D00294

Death of I/M Jermaine Wilson #456612
Page of 2 of 9

Blood was also observed on the inner shelf of the locker, on the hanging bed sheet and on the floor near the locker. Inmate Wilson also appeared to have blood smears on his face near his nose and on the side of his face near his ear. Detective Chapman processed the cell and took photographs.

Writer learned that Sgt. Stephanie Carpenter, C/O Paul Unsworth, C/O Jonathan Barber, S/Sgt. Michael Newman and C/O Michelle Phillips were assigned to Building #18 when the incident occurred. Writer also spoke to Lt. Michael Welcome, the area lieutenant.

Writer conducted interviews of the officers in the institutional investigator's office.

Deputy Warden David Pierce arrived and directed Lt. Marcello Rispoli to obtain a body receipt from the State Medical Examiner's Office when they arrive to take custody of Inmate Wilson.

## INTERVIEWS:

Writer interviewed Lt. Michael Welcome on Saturday, February 19th, 2005 at approximately 0130 hours in the institutional investigator's office. Lt. Welcome informed Writer that he was the area lieutenant for S.H.U when the incident occurred. Lt. Welcome said he was in Building #17 and was told there was an emergency situation in Building #18. Lt. Welcome stated that he told Sgt. Matthew Stevenson to come with him. Lt. Welcome related that as he entered Building #20 he saw Lt. Marcello Rispoli who he also told to accompany him. According to Lt. Welcome, when he arrived at "D" tier, Cell Upper #6, Sgt. Stephanie Carpenter, C/O Michael Newman and C/O Paul Unsworth were in the cell and the inmate was lying on the floor, face up with his feet near the door. Lt. Welcome said he called a Code #7 on the radio while Sgt. Matthew Stevenson called on the radio to have #911 notified. Lt. Welcome told Writer that Lt. Rispoli went into the cell and checked the inmate for a pulse. Lt. Welcome said Nurse Tracy Holmes arrived and asked them to move the inmate farther away from the bed so she could perform C.P.R. Lt. Welcome told Writer that Nurse Holmes said she thought the inmate might have a faint pulse but he (Lt. Welcome) was not sure. Lt. Welcome stated that Nurse Holmes began doing chest compressions on Inmate Wilson while Sgt. Carpenter was performing mouth to mouth resuscitation. Lt. Welcome advised that the paramedics arrived shortly thereafter and took over life saving efforts. Lt. Welcome said one of the paramedics cut Inmate Wilson's T-shirt in order to utilize a heart monitor and defibrillator. Lt. Welcome informed Writer that the paramedics were in contact with a doctor by telephone and they suspended life saving efforts after a doctor pronounced Inmate Wilson dead at 2316hrs. Lt. Welcome said the Delaware State Police officers arrived and secured the cell door until the detectives arrived to process the scene. Lt. Welcome told Writer he then left the tier to speak with Deputy Warden Burris.

D00295

Death of I/M Jermaine Wilson #456612
Page of 3 of 9

Writer interviewed C/O Jonathan Barber on Saturday, February 19th, 2005 at approximately 0137 hours in the institutional investigator's office. C/O Barber told Writer he was assigned to "A" and "B" tiers and had not been on "D" the entire shift. According to C/O Barber, he was on "B" doing phone punches when the lights flashed off and on at which time he looked around and saw C/O Paul Unsworth running off of "A" tier. C/O Barber told Writer he left "B" tier and ran to "D" along with C/O Unsworth and Sgt. Stephanie Carpenter who had been in the control pod. C/O Barber stated that he arrived at Cell Upper #6 on "D" tier and looked through the window of the door where he could see an inmate that appeared to be hanging in front of the wall locker. According to C/O Barber, when the cell door was opened C/O Unsworth and Sgt. Carpenter ran in first. C/O Barber said C/O Unsworth was able to get the bed sheet loose that was tied around the inmate's neck. C/O Barber stated that Sgt. Carpenter and C/O Unsworth laid the inmate on the floor of the cell, face up with his feet toward the cell door. C/O Barber advised Writer that Sgt. Carpenter said she didn't feel a pulse. C/O Barber related that the inmate was dressed in his orange jumpsuit and was wearing his inmate boots. C/O Barber said Lt. Michael Welcome, Lt. Marcello Rispoli and Sgt. Matthew Stevenson arrived immediately thereafter, followed by Nurse Tracey Holmes. C/O Barber stated he then left the cell area and began completing his incident report. C/O Barber said he did not know the inmate and had never had any interaction with him.

C/O Paul Unsworth was interviewed by Writer on Saturday, February 19th, 2005 at 0145 hours in the institutional investigator's office. C/O Unsworth said he was assigned to "A" and "B" tiers and was doing phone punches when he noticed the lights flashing off and on. C/O Unsworth stated he heard Sgt. Carpenter yell "emergency" as he observed her running toward "D" tier. C/O Unsworth related that as he caught up with Sgt. Carpenter at "D" tier doors, she said, "We got one hanging". C/O Unsworth told Writer he entered Cell Upper #6 as soon as the door was opened and he checked the inmate that was hanging for a pulse with negative results. C/O Unsworth said he pulled on the sheet that was tied around the inmate's neck and it came loose with very little effort. C/O Unsworth advised Writer that the sheet was not knotted but only seemed like the end was tucked under the other portion that was wrapped around his neck. C/O Unsworth said he and Sgt. Carpenter laid the inmate on the floor, face up with his feet toward the door. C/O Unsworth related that he again checked for a pulse at the inmate's neck while Sgt. Carpenter removed the inmate's left boot and checked for a pulse in his leg. C/O Unsworth said neither he or Sgt. Carpenter were able to feel a pulse on the inmate. C/O Unsworth stated that Nurse Tracy arrived very quickly and she began performing chest compressions while Sgt. Carpenter gave the inmate mouth to mouth resuscitation. C/O Unsworth advised Writer that they continued life saving efforts until the Emergency Medical Technicians arrived. C/O Unsworth told Writer he had blood on his hands from he inmate so he left the cell and washed his hands. **A000243**

D00296

Death of I/M Jermaine Wilson #456612
Page of 4 of 9

C/O Unsworth told Writer that the inmate had blood coming from his nose, mouth and ears. C/O Unsworth said he thinks the inmate may have had a gash (cut) on the back of his head or neck. C/O Unsworth informed Writer that he didn't touch anything else in the cell. C/O Unsworth related that this inmate had only come to Building #18 recently from C.V.O.P. C/O Unsworth told Writer that he heard this inmate was inquiring earlier about when he was supposed to be released. C/O Unsworth related that the inmate was pretty quiet and didn't cause any problems.

Writer interviewed S/Sgt. Michael Newman on Saturday, February 19th, 2005 at 0153 hours in the institutional investigator's office. S/Sgt. Newman was working overtime and normally works in maintenance. S/Sgt. Newman told Writer he was assigned to work "C & D" tiers of Building #18. S/Sgt. Newman said that at about 1730 hours to 1800 hours Inmate Wilson was complaining that he should be getting released today. S/Sgt. Newman advised Writer that he advised Sgt. Carpenter who subsequently looked it up on the computer. According to S/Sgt. Newman, Sgt. Carpenter called someone and asked if Inmate Wilson was supposed to be released. S/Sgt. Newman informed Writer that the last time he spoke to Inmate Wilson was around 2200 hours to 2215 hours. S/Sgt. Newman related that he was doing the phone punches on "D" tier when he looked in Cell Upper #6 around 2240 hours. According to S/Sgt. Newman, Inmate Wilson initially appeared to be in a sitting position but then noticed that something was wrapped around his neck and his head was tilted to the side. S/Sgt. Newman also said "snot" was coming out of Inmate Wilson's nose. S/Sgt. Newman said he ran down the steps to the big window on the tier and signaled to the control pod officer. S/Sgt. Newman demonstrated by circling his hand around his neck. S/Sgt. Newman told Writer he did not have a radio. S/Sgt. Newman advised Writer that he returned to Cell Upper #6 and was almost immediately joined by Sgt. Carpenter, C/O John Barber and C/O Paul Unsworth. S/Sgt. Newman said that C/O Unsworth and Sgt. Carpenter were the first ones in the cell when the door was opened, followed by himself and then C/O John Barber. S/Sgt. Newman informed Writer that C/O Unsworth checked Inmate Wilson's neck for a pulse but did not think he felt one. S/Sgt. Newman told Writer that C/O Unsworth took the sheet from around the inmate's neck. According to S/Sgt. Newman, Sgt. Carpenter called on the radio and requested paramedics. S/Sgt. Newman advised Writer that C/O Unsworth and Sgt. Carpenter laid the inmate flat on the floor on his back. Sgt. Carpenter then took the inmate's left boot off and checked for a pulse in his lower leg with negative results. Sgt. Newman told Writer that C/O Unsworth and Sgt. Carpenter began performing C.P.R. on Inmate Wilson. According to S/Sgt. Newman, Lt. Rispoli, Lt. Welcome and Sgt. Stevenson arrived along with a black nurse, whose name he did not know. S/Sgt. Newman said he backed out of the way because of the number of officers present and was told to go do his incident report. Writer asked S/Sgt. Newman if he had been performing his phones punches as required by the post orders in Building #18. S/Sgt. Newman told Writer he had done phone punches

D00297

Death of I/M Jermaine Wilson #456612
Page of 5 of 9

approximately every half hour and that the phone seemed to work sometimes and other times did not. S/Sgt. Newman stated that he notified the pod officer and thought that they were making notations in the logbook. S/Sgt. Newman told Writer he did not know Inmate Wilson and had no prior interaction with him.

Writer interviewed Sgt. Stephanie Carpenter on Saturday, Feb. 19th, 2005 at approximately 0205 hours in the institutional investigator's office. Sgt. Carpenter told Writer she was the lead worker for Building #18 and was working in the control pod overseeing tiers "A and B" at the time of the incident. Sgt. Carpenter informed Writer that C/O Michelle Phillips was operating the doors in the control pod for tiers "C and D". According to Sgt. Carpenter, C/O Phillips yelled, "We've got a problem. It's a hanging." Sgt. Carpenter told Writer that she ran out of the control pod where she and fellow officers, C/O Unsworth and C/O John Barber met her at "D" tier door. Sgt. Carpenter said the three of them responded to Upper #6 where S/Sgt. Newman was already standing by. Sgt. Carpenter advised Writer that when she looked through the cell door window the inmate appeared to be in a semi sitting position with what looked like a sheet wrapped around his neck and his head "cocked" to one side. Sgt. Carpenter said that when the door was opened she could see blood on the inmate's mouth and blood around or near his collar area. Sgt. Carpenter told Writer that she and C/O Unsworth were the first two in the cell and that C/O Unsworth removed the sheet from around the inmate's neck while she was trying to lift him up to take some of the weight off of his neck. Sgt. Carpenter related that C/O Unsworth put his hands under the inmate's shoulders and she grabbed his ankles so they could move him onto the floor of the cell. Sgt. Carpenter said the inmate was then lying on his back with his feet closest to the door. Sgt. Carpenter informed Writer that she told C/O Unsworth to check the inmate's neck for a pulse. According to Sgt. Carpenter, after C/O Unsworth told her he didn't feel a pulse, she removed the inmate's left boot and sock attempting to locate a pulse in his ankle area, also with negative results. Sgt. Carpenter advised Writer the inmate displayed no vital signs. Sgt. Carpenter said she began mouth to mouth resuscitation at about the same time that "Nurse Tracey" arrived and started doing chest compressions. Sgt. Carpenter said the lieutenants arrived at the same time as "Nurse Tracey" did. Sgt. Carpenter told Writer that the E.M.T.'s then appeared shortly thereafter and took over the C.P.R. Sgt. Carpenter told Writer she never observed the inmate display any signs of life although his body was still warm.

Sgt. Carpenter related that S/Sgt. Newman asked her earlier that same evening if Inmate Wilson was supposed to be release today. Sgt. Carpenter said she called Sgt. Daggy in the receiving room sometime after 8:00p.m. to check to see if he knew anything about Inmate Wilson being released. Sgt. Carpenter advised Writer that Inmate Wilson questioned her for approximately the past two days as to when he would be released. Sgt. Carpenter said she was on "D" tier for a couple of minutes earlier this same evening looking for a "loaner" book

A000245

000298

Death of I/M Jermaine Wilson #456612
Page of 6 of 9

but she did not speak to him or hear anything that would have alerted her that he was contemplating suicide. Writer asked Sgt. Carpenter if she or any of the other officers touched or moved anything in Inmate Wilson's cell. Sgt. Carpenter replied, "no, other than moving the inmate".

Writer interviewed Lt. Marcello Rispoli on Saturday, February 19th, 2005 at approximately 0415 hours in the institutional investigator's office. Lt. Rispoli was assigned as the executive officer for S.H.U. and M.H.U. Lt. Rispoli related that he was in the lieutenant's office of Building #20 when Lt. Welcome came by and said, "We have a hanging in #18". Lt. Rispoli told Writer that Sgt. Matthew Stevenson was with Lt. Welcome and he accompanied them to Building #18, "D" tier, Upper #6.

Lt. Rispoli related that when they arrived at the scene, Sgt. Carpenter, C/O Unsworth and S/Sgt. Newman were in the cell. Lt. Rispoli described Inmate Wilson as lying flat on his back with his eyes open and his body warm. Lt. Rispoli said that Sgt. Carpenter was doing mouth to mouth resuscitation and Nurse Tracey Holmes arrived and began performing chest compressions. Lt. Rispoli told Writer the inmate did not display any signs of life. According to Lt. Rispoli, two Delaware State Police officers arrived at about the same time as the Emergency Medical Technicians. Lt. Rispoli advised Writer that the E.M.T.'s replaced Sgt. Carpenter and Nurse Holmes in performing C.P.R. Lt. Rispoli stated that he checked Inmate Wilson's neck for a pulse but did not feel one. Lt. Rispoli said he saw a note lying on the foot locker, that said something about, "Could you check on when I'm supposed to get out". According to Lt. Rispoli, the note was not addressed to anyone. Lt. Rispoli told Writer he did not remove the note. Lt. Rispoli informed Writer he did not have any prior interaction with Inmate Wilson.

Writer interviewed Licensed Practical Nurse Tracey Holmes on Saturday, February 19th, 2005 at approximately 0430 hours in the institutional investigator's office. LPN Holmes stated she was working 2000 hours to 0800 hours and was in the medical office of Building #20 at the time of the incident. LPN Holmes told Writer that she was notified at approximately 2245 hours there was a medical emergency on "D" tier of Bldg. #18. LPN Holmes said she grabbed some equipment and responded immediately. LPN Holmes told Writer that Sgt. Carpenter was giving the inmate mouth to mouth resuscitation when she arrived. LPN Holmes related that she checked the right radial artery of the inmate for a pulse and thought she felt a faint pulse. According to LPN Holmes, she observed that the inmate had a little blood on the back right side of his head and that he was not breathing on his own. LPN Holmes said the inmate's eyes were fixed and dilated. LPN Holmes related that she began doing chest compressions while Sgt. Carpenter continued mouth to mouth resuscitation until the E.M.T.'s arrived. LPN Holmes told Writer that the inmate never displayed any signs of consciousness. LPN Holmes stated she saw some blood on the floor and what appeared to be a line of blood along the right side of his

D00299

Death of I/M Jermaine Wilson #456612
Page of 7 of 9

neck near his head. Writer questioned LPN Holmes as to the position of the inmate's body upon her arrival. LPN Holmes also described Inmate Wilson as lying flat on his back in the cell floor with his feet toward the door. LPN Holmes said she did not notice anything remarkable or questionable on Inmate Wilson's body or in his cell. LPN Holmes informed Writer that Inmate Wilson had not been in S.H.U. very long and he did not have a medical record. She also told Writer she did not know Inmate Wilson. LPN Holmes added that Inmate Wilson's shirt was cut open by the E.M.T.'s upon their arrival.

Writer spoke to Delaware State Police Corporal John Penrod while in Building #18. Cpl. Penrod told Writer that Douglas Phillips and Jason McDonald were the two Kent County Paramedics from Station #66 that responded and communicated with Kent General Hospital while performing life saving efforts. Cpl. Penrod said he was directed to secure Cell Upper #6 upon the departure of the paramedics and remain at the scene until the arrival of Delaware State Police evidence technician William Chapman.

**CONCLUSION:**

Inmate Jermaine Wilson was transferred from C.V.O.P. to D.C.C. on January 25th, 2005. Inmate Wilson was placed in S.H.U., Building #18, "D" tier, Upper #6. Inmate Wilson was reportedly "low key" and did not cause any problems. A query of incident reports between January 25th, 2005 and February 18th, 2005 reflects no reports were written involving Inmate Wilson. Inmate Wilson was sentenced to Level Five until February 18th, 2005 and was then eligible to be transferred to Level Four but to be held at Level Five until space became available.

Sgt. Stephanie Carpenter stated that Inmate Wilson was courteous toward her and that he had been inquiring for a couple of days as to when he would be released. Sgt. Carpenter said that S/Sgt. Newman asked her earlier this same evening if she was aware that Inmate Wilson was supposed to be released today. Sgt. Carpenter related that sometime after 2000 hours she contacted Sgt. Daggy in the receiving room and attempted to ascertain Inmate Wilson's release date. Inmate Wilson never threatened bodily harm to himself or indicated he was suicidal, according to everyone interviewed.

The logbook for "C & D" tiers of Building #18 reflect that phone punches were being maintained and that the longest span between phone punches was from 1747 hours to 1852 hours, however the logbook notes that medication was distributed at 1815 hours on "D" tier. S/Sgt. Newman, who was assigned to "D" tier related during his interview that he was having periodic problems with the phone punches that seemingly did not working properly. There is a logbook entry at 1603 hours noting that the "D" tier, bottom phone continued to ring and the recording did not pick up, tried numerous times.

D00300

Death of I/M Jermaine Wilson #456612
Page of 8 of 9

Two other entries were made at 2119 hours and 2200 hours stating that the phone continuously rang on both "C & D" tiers. The phone punch records recorded these times as having occurred. Although the officer conducting the phone punch was in doubt that the phone punch was recorded, it appears that it was. The last recorded phone punch for upper "D" tier occurred at 2203 hours and the next phone punch occurred at 2240 hours at which time S/Sgt. Newman discovered Inmate Wilson hanged.

All Building #18 officers responded, as well as Lt. Welcome, Lt. Rispoli and Sgt. Stevenson. LPN Holmes arrived at approximately the same time as did Lt. Welcome, Lt. Rispoli and Sgt. Stevenson. This is noted at 2245 hours in the logbook. Kent County Paramedics were noted in the logbook as arriving at 2303 hours. Delaware State Police Sgt. Raymond Peden and Cpl. John Penrod arrived in Building #18 at 2326 hours. After a physician at Kent General Hospital pronounced Inmate Wilson dead via telephone with the paramedics, Delaware State Police uniform officers had Cell Upper #6 secured with Inmate Wilson still inside until detectives arrived.

Lt. Rispoli related that he observed a hand written note or letter in the top of Inmate Wilson's footlocker. According to Lt. Rispoli, the note was not addressed to anyone and only said, could you please check on when I'm supposed to get out. D.C.C. officers observed no suicide note and none was found by D.S.P. investigators. Sgt. Stephanie Carpenter checked the outgoing inmate mailbox, at Writer's request, looking for any letters from Inmate Wilson with negative results.

Writer subsequently e-mailed D.S.P. Detective Mary Barknowski as a follow up to confirm the item Inmate Wilson used to hang himself was a bed sheet and to ascertain the time and who pronounced Inmate Wilson dead. Det. Bartkowski responded that Inmate Wilson was pronounced dead at 2316 hours by Medic Station #3. Det. Bartkowski also stated that Inmate Wilson used a sheet to hang himself. According to Det. Bartkowski, the death certificate listed the cause of death as asphyxia due to hanging.

Logbook entries and phone punch records reflect the officers were conducting the appropriate checks of the inmates in a timely manner. It was during a routine phone punch that S/Sgt. Newman found Inmate Wilson had hanged himself. According to all of the security and medical personnel interviewed, Inmate Wilson was still warm and immediate life saving efforts were initiated in an attempt to revive him. These efforts continued until paramedics arrived and took over. The paramedics were in telephone contact with Kent General Hospital and Inmate Wilson was pronounced at 2316 hours.

Detective Bartkowski and Writer did not find any inconsistencies in statements by the officers involved. Writer found nothing to indicate Inmate Wilson had a predisposition to injure or kill himself.

D00301

A000248

Death of I/M Jermaine Wilson #456612
Page of 9 of 9

The bed sheet Inmate Wilson utilized is a standard issue item to all inmates. The locker to which Inmate Wilson tied the bed sheet is the same as that in all of the S.H.U. cells.

Writer concludes that Inmate Wilson waited until S/Sgt. Newman conducted his previous cell checks and then intentionally tied his bed sheet to the upper inside of the cell locker. Inmate Wilson wrapped the loose end of the bed sheet around his neck, tucking it under the previously wrapped piece. Inmate Wilson collapsed his legs to where he was in a semi-sitting position causing him to loose consciousness and ultimately die. The toxicology reports from the State Medical Examiner's Office have not been received by Delaware State Police as yet. Delaware State Police investigators have indicated the hanging was a suicide. Writer found the officers acted appropriately and professionally.

RED/tab
Attachments
CC:    Elizabeth Burris, Deputy Warden
       David Pierce, Deputy Warden I
       File

D00302