## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUSIE A. WILSON, individually and in her capacity as administratrix of the Estate of JERMAINE LAMAR WILSON, deceased, and in her capacity as next friend of Z.W., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> STANLEY W. TAYLOR, JR., individually; PAUL HOWARD, individually; NOREEN RENNARD, individually; THOMAS L. CARROLL, individually; BETTY BURRIS, individually; DAVID PIERCE, individually; MICHAEL RECORDS, individually; and DAVID McDONALD, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 05-821 (SLR) <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT REGARDING THEIR MOTION FOR SUMMARY JUDGMENT [RE: D.I. 62]**

**NOW COMES** plaintiff, by and through her undersigned counsel, and hereby submits, in accordance with the Order of the Court dated February 13, 2008 [D.I. 62], the following Response to defendants' short and concise statement (the "Statement") of the material facts and legal issues set forth in their Motion for Summary Judgment and Opening Brief in Support. (D.I. 58, 59).:

**I.    Plaintiff's Response to Defendant's Statement of Material Facts To Which There Is No Issue For Trial**

    1.    On June 20, 2003, Jermaine Lamar Wilson was sentenced by the Delaware Superior Court to serve a minimum/mandatory term of two years at Level V Incarceration,

followed by one year at Level IV work release, suspended after six months for six months at Level III supervision.

**RESPONSE:**

   Admitted.

2.   When Jermaine began his incarceration he was evaluated by a mental health professional. Jermaine denied any history of mental health problems or suicide attempts. Plaintiff concedes that prior to his death, Jermaine never exhibited suicidal tendencies nor expressed suicidal ideations or plans.

**RESPONSE:**

   Admitted.

3.   On January 25, 2005, while in the custody of the Central Violation of Probation Center ("CVOP"), Jermaine violated a CVOP rule by talking in the hall. Jermaine was ordered to stop talking. When he responded in a physically threatening manner and refused to return to his cell, Jermaine was placed in a holding cell, where he began to bang on the door and glass windows of the cell with his feet. Jermaine was ordered to stop kicking the door and windows but refused. Jermaine was then sprayed with a short burst of capstun and ceased his kicking. Defendant Michael Records of CVOP issued an administrative warrant for Jermaine's violation of the terms of his Level IV supervision, based on this behavior. Jermaine was then transferred to the Delaware Correctional Center ("DCC").

**RESPONSE:**

   Admitted in part and denied in part. It is admitted only that on January 25, 2005, while in the custody of CVOP, Jermaine was involved in a dispute/altercation with two corrections

officers, one of whom was defendant McDonald, which resulted in the issuance of an Administrative Warrant by defendant Records for the alleged violation of the terms of his Level IV supervision, which led in turn to the filing of a Violation of Probation ("VOP") against Jermaine in connection with his sentence on the underlying charges. The balance of this paragraph is denied. Plaintiff disputes the nature of the incident which led to the filing of the VOP. Jermaine alleged, in an undated letter to the sentencing judge in Superior Court which was filed with the New Castle County Prothonotary on February 11, 2005, that the dispute/altercation was initiated by two corrections officers, specifically defendant McDonald and a "Sgt. Boom", who was apparently Officer Johnny Boone. Jermaine also alleged that he was in fact assaulted by these officers after defendant McDonald directed an obscenity and a racial epithet to Jermaine.[1]

4.      Upon his arrival at DCC, Jermaine was classified by DCC officials as a detentioner with an open charge. Based on his classification and behavioral history, the DCC officials assigned Jermaine to a cell in the detentioner tier of DCC's Security Housing Unit ("SHU").

**RESPONSE:**

Admitted.

5.      On February 14, 2005 the Delaware Superior Court Prothonotary's office filed an order stating that Jermaine's violation of probation was withdrawn. There is no evidence that this order was transmitted to DCC or that the order was received by the institutional records unit at DCC prior to Jermaine's death.

---

[1] This letter was produced by plaintiff in discovery but not included in defendant's Appendix. A true and correct copy of this letter is therefore attached hereto as **Exhibit A.**

**RESPONSE:**

Denied. On February 10, 2005, Jermaine was brought before Judge Richard R. Cooch of the Superior Court for a hearing on the VOP filed against him by defendant Records. At that time, Jermaine requested a contested VOP hearing, and Court scheduled that hearing for February 15, 2005. *See* Amended Complaint, Ex. C (transcript of 2/10/05 VOP hearing) [D.I. 23] Nonetheless, the VOP was withdrawn on February 10, 2005 by the Department of Corrections for reasons which were not stated on the record. The Superior Court entered a Violation of Probation Sentence Order noting the withdrawal of the VOP and holding that defendant was not in violation. (A193-A194) Later that day, the Superior Court ordered Jermaine's release, and the Court's order was filed with the Prothonotary in the form of the Court's Sentencing Worksheet, which specifically states that defendant was to be released. *See* Amended Complaint, Ex. A [D.I. 23] (Superior Court Sentencing Worksheet).  To this day, defendants have not offered an explanation as to why the VOP was withdrawn. Defendants have admitted only that Jermaine was in fact scheduled to be released on February 18, 2005, the day of his death.

Jermaine was told by someone at DCC that he would be released at 12:01 a.m. on February 18, 2005, and was also told that he would be permitted to begin his Level III sentence after being confined at DCC until February 18, 2005. *See* **Exhibit B** (2/10/05 letter from Jermaine to plaintiff) and **Exhibit C** (undated letter from Jermaine to plaintiff).[2] Defendants' witnesses have testified that it was DOC policy and procedure to rely on DOC transportation officers to transmit a court's release order to the facility holding the inmate who is the subject of the release order, to the extent the court entered such an order at the time of the inmate's appearance. There is a conflict between defendants' testimony and Jermaine's statement in the

---

[2] These letters were produced by plaintiff in discovery but not included in defendants' Appendix.

letters to his mother; as such, a factual dispute exists as to whether DOC and its employees had actual or constructive knowledge of Jermaine's release date.

6.      On February 18, 2005, Jermaine told officers at DCC that he expected to be released. Officers checked the DOC computers and the records unit but could not find an order from a court authorizing Jermaine's release. DCC officials cannot release an inmate without an order from a court authorizing release.

**RESPONSE:**

Denied as stated. It is admitted that on February 18, 2005, Jermaine told officers at DCC that he expected to be released and that DOC computers at that time had no record of a Court order authorizing Jermaine's release. Defendants have, however, acknowledged that for several days prior to that date, Jermaine made repeated inquiries with DCC officers concerning his release. (A245, A247)[3] Moreover, as of February 18, 2005, there did in fact exist an order from a Court directing Jermaine's release which was entered on February 10, 2005, of which DCC officials, including defendants, in the exercise of reasonable care and with due regard to Jermaine's constitutional rights, should have been aware, particularly as the violation was withdrawn at the request of DOC.

7.      Inmates, like Jermaine, who are housed in the SHU were checked by officers at intervals no less than thirty minutes apart.

---

[3] The internal investigation into Jermaine's death conducted by DOC revealed that "Sgt. Stephanie Carter stated that Inmate Wilson was courteous toward her and that he had been inquiring for a couple of days as to when he would be released." (A247) Similarly, a Sgt. Stephanie Carpenter was interviewed, who also stated that Jermaine had questioned her "for approximately the past two days as to when he would be released." (A245)

**RESPONSE:**

Admitted that this was the procedure in place at the SHU at the time of Jermaine's death.

8. Shortly after 10:00 p.m. on February 18, 2005, an officer checked Jermaine and did not notice anything unusual about Jermaine's behavior in his cell. Jermaine never gave any indication that he had suicidal ideations or plans.

**RESPONSE:**

Admitted in part and denied in part. It is admitted that shortly after 10:00 p.m. on February 18, 2005, an officer checked Jermaine and did not notice anything unusual about Jermaine's behavior in his cell. The balance of this statement is denied. The record reflects that a fellow DCC inmate related that Jermaine had advised DOC officers on duty that he was going to harm himself if he was not released and that "he was going to be taken out in a body bag." See **Exhibit D** (12/9/05 Letter of Stanley E. Washington).[4]  There is a factual dispute as to whether Jermaine gave indications to DCC officers as to suicidal ideations or plans in the days prior to his anticipated release date.

9. At 10:40 p.m. the officer checked Jermaine's cell again and discovered Jermaine hanging from the clothes locker in his cell. The officer immediately called a code and other officers arrived at the cell and began efforts to revive Jermaine. A nurse also arrived and began assisting in the performance of CPR.

**RESPONSE:**

---

[4] This letter was produced by plaintiff in discovery but not included in defendants' Appendix.

The Incident Reports, Emergency Room Referral, Crime Reports, medical reports, and internal investigation reports contained in defendants' Appendix to their Brief in Support of their Motion for Summary Judgment speak for themselves.

10. At approximately 11:05 p.m. paramedic staff arrived at DCC and took over CPR on Jermaine by attaching a portable defibrillator and a heart monitor. Paramedics were unable to revive Jermaine and he was pronounced dead at 11:16 p.m.

**RESPONSE:**

The Incident Reports, Emergency Room Referral, Crime Reports, medical reports, and internal investigation reports contained in defendants' Appendix to their Brief in Support of their Motion for Summary Judgment speak for themselves.

11. On February 19, 2005, Medical Examiner Richard T. Callery autopsied Jermaine's body. The Medical Examiner concluded that the cause of Jermaine's death was asphyxiation due to hanging. It appears that Jermaine struck his head on a piece of metal protruding from the clothes locker as he swung from the noose he fashioned from a sheet, causing a gash in his head and a small amount of blood. There was no evidence of any foul play.

**RESPONSE:**

The autopsy report speaks for itself.

II. **Plaintiff's Response to Defendants' Statement of Legal Issues Upon Which Judgment Is Sought**

1. Any claims arising from the violation of probation on January 25, 2005 are barred, in that Jermaine was afforded both administrative and judicial remedies to contest his

7

guilt, and his institutional transfer pending a hearing was consistent with the bail conditions imposed by the Superior Court.

**RESPONSE:**

Denied. The VOP was voluntarily withdrawn by one or more employees of DOC for reasons which defendants have not disclosed to this day, and the Superior Court determined that Jermaine was not in violation of probation due to the withdrawal of the VOP. (A193-A194)

2.	Plaintiff has failed to produce any evidence that the Department of Correction received an order from the Superior Court authorizing Jermaine's release on February 18, 2005, and thus no claim of so-called "state-created danger" can be asserted against the Defendants based on the continued detention and confinement of Jermaine.

**RESPONSE:**

Denied. There is a factual dispute as to the circumstances surrounding the withdrawal of the VOP. Only DOC may withdraw a violation of probation. The Court must approve any withdrawal. (A109) DOC is also empowered by statute to administratively resolve "technical and minor violations" of probation, unless the violation is the result of an arrest or conviction for a new criminal offense. 11 *Del. C.* § 4334(d). In this case, Jermaine was neither arrested nor charged with a new criminal offense. He was apparently told by one or more DOC probation personnel that he would stay at DCC until February 18, 2005, at which time he would be released to begin his Level III time. *See* **Exhibit B**. A factual dispute exists as to whether the withdrawal of Jermaine's VOP was administratively resolved by DOC pursuant to 11 *Del. C.* § 4334(c), and, if so, what the terms of such administrative resolution were. At a minimum, because the probation was withdrawn by DOC, DOC and its employees were on constructive or

actual notice of Jermaine's release date. Defendants also agree that Jermaine made several inquiries with DCC officers concerning his release date for several days prior to his death, which gave DCC staff ample opportunity to secure the Court's release order and/or make inquiry with defendant Records as to the disposition of the VOP. (A245-A247)

3.  There is no evidence of mental health problems, psychiatric treatment, or threats of suicide on the part of Jermaine before his death, and any claim of "deliberate indifference" or failure to train based on the supposed failure to diagnose or protect Jermaine from such harm is barred.

**RESPONSE:**

Admitted in part and denied in part. It is admitted only that there is no evidence of mental health problems or psychiatric treatment on the part of Jermaine before his death. The balance of this statement is denied. The record indicates that Jermaine had been "playing when he attempted to make the officers think he was going to hang himself." *See* **Exhibit E** (1/8/06 letter from Kevin Brathwaite).[5] The record also indicates that Jermaine had informed officers on duty at DCC that he was going to harm himself if he was not released and that he said he "was going to be taken out in a body bag." *See* **Exhibit D**. Defendants were aware that DCC inmates would sometimes feign suicide attempts in an attempt to gain attention, because they would be immediately taken to the infirmary for psychiatric observation. (A134-A135) Jermaine, who had been "banging" on his cell door "all day" demanding to speak to someone about his release date (A133), which he had been told would be 12:01 a.m. on February 18, 2005 (**Exhibit B**), had left

---

[5] This letter was produced by plaintiff in discovery but not included in defendants' Appendix.

a note on top of his footlocker stating "could you please check on when I'm supposed to get out", which was located at the time his body was found. (A248)  In light of these facts, there is a factual dispute as to whether defendants were deliberately indifferent to Jermaine's status and as to the tendency of DCC inmates to feign suicide attempts to gain attention. There is also a factual dispute as to whether Jermaine feigned a suicide attempt in an attempt to speak to someone concerning his previously-ignored requests to obtain information about his release date.


4.      Plaintiff has failed to produce any evidence from which a jury could conclude that Jermaine was murdered, and any claim of responsibility for his death based on "state-created danger" or "deliberate indifference" on the part of the Defendants must fail.

**RESPONSE:**

Admitted in part and denied in part. It is admitted only that defendant has produced no evidence from which a jury could conclude that Jermaine was murdered. The balance of this paragraph is denied. In her Amended Complaint, defendant alleged, in the alternative, that Jermaine "otherwise perished due to asphyxia" on February 18, 2005. There is a factual dispute as to whether Jermaine's death was caused by a "state-created danger" and/or "deliberate indifference". *See* Plaintiff's Responses to ¶¶ II(2) and II(3), *supra*.


5.      Plaintiff has failed to identify an alternative practice or training that would not have resulted in Jermaine's suicide.

**RESPONSE:**

Denied. Proper documentation of Jermaine's release date, and/or better communication between defendant Records, the Bureau of Community Correction, and DCC concerning the

withdrawal of the VOP, would clearly have resulted in Jermaine being released at the time he was promised, which was 12:01 a.m. on February 18, 2005. As a result, Jermaine would not have feigned a suicide attempt in a failed effort to find someone to verify his release date. Significantly, to this day, defendants have offered no explanation as to why Jermaine's VOP was withdrawn after Jermaine requested a contested VOP hearing, nor have defendants offered any explanation as to why Jermaine's release date did not appear in the DCC computer system, other than to cast blame on the Superior Court for failing to transmit the release order to DCC.

      6.      Plaintiff cannot establish the existence of a confederation or that Officer McDonald committed an unlawful act in furtherance of a conspiracy.

**RESPONSE:**

Denied. The record reflects that the corrections officers involved in the incident with Jermaine which led to his detention at DCC were defendant McDonald and Officer Johnny Boone. (A178-A182) Jermaine alleged, in essence, that these two individuals agreed and conspired to assault him, resulting in the altercation that formed the basis of the Administrative Warrant issued by defendant Records. Defendants deny Jermaine's version of events. See **Exhibit A**. Therefore, there is a factual dispute concerning these issues.

      7.      Defendants did not conspire to violate Jermaine's civil rights, therefore there is no basis for Plaintiff's conspiracy claim.

**RESPONSE:**

Denied. *See* Plaintiff's Response to ¶ II(6), *supra*.

8.     Plaintiff cannot establish that Officer McDonald was engaged in a conspiracy to violate Jermaine's rights, and therefore she cannot establish that Defendants Taylor, Howard, Carroll, Burris and Pierce failed to prevent a conspiracy.

**RESPONSE:**

Denied. *See* Plaintiff's Response to ¶ II(6), *supra*.

9.     Officer McDonald is immune from liability for an assault and battery claim under the State Tort Claims Act, and because there is no merit to Plaintiff's claim.

**RESPONSE:**

Denied. The State Tort Claims Act does not immunize State employees for acts conducted with gross or wanton negligence. 10 *Del. C.* § 4001(3). The nature of the altercation between Jermaine and Officer McDonald is in dispute. Jermaine alleged that Officer McDonald ordered him into a holding cell, "slammed" a door which hit Jermaine in the back, then grabbed Jermaine by the throat after Jermaine reacted to that initial assault by calling Officer McDonald a "sucker." The letter also alleges that Officer McDonald uttered a racial epithet at Jermaine and then "banged" Jermaine's head against the wall, causing a wound on the back of Jermaine's head. *See* **Exhibit A**. Given these allegations, there is a factual dispute as to whether that assault was carried out with gross or wanton negligence.

10.    The Defendants' conduct did not cause Jermaine to commit suicide, and therefore there is no basis for a wrongful death claim.

**RESPONSE:**

Denied. *See* Plaintiff's Responses to ¶¶ II(2), II(3), and II(5), *supra*.

12

11.  Defendants are immune from liability in their individual capacities pursuant to the doctrine of Qualified Immunity, as the facts clearly demonstrate that they did not violate Jermaine's Constitutional rights.

**RESPONSE:**

Denied. A factual dispute exists as to whether defendants violated Jermaine's Constitutional rights. *See* Plaintiff's Responses to ¶¶ I(3), II(2), II(3), II(5), and II(9), *supra*.


12.  Plaintiff cannot demonstrate that the Defendants' conduct was willful or malicious, nor can she demonstrate that punishing the Defendants will deter future behavior, therefore there is no basis for an award of punitive damages.

**RESPONSE:**

Denied. The nature of the incident between Jermaine and Officer McDonald is in dispute; therefore, there is a dispute as to whether Officer McDonald's conduct was willful or malicious. *See* Plaintiff's Response to ¶ II(9), *supra*. Moreover, because there is a factual dispute as to whether Jermaine's feigned suicide attempt was caused by defendants' failure to implement proper protocols for transmitting information on inmate release dates, and/or their actual knowledge of Jermaine's release date, a reasonable jury could conclude that punishing defendants for these actions and inactions would deter similar behavior in the future.

**PERRY & SENSOR**

By:   /s/ Michael L. Sensor
      Michael L. Sensor, Esquire
      Delaware Bar ID No. 3541
      One Customs House, Suite 560
      P.O. Box 1568
      Wilmington, DE 19899-1568
      Telephone: (302) 655-4482
      Attorney for Plaintiff

Dated: March 20, 2008

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUSIE A. WILSON, individually and in her capacity as administratrix of the Estate of JERMAINE LAMAR WILSON, deceased, and in her capacity as next friend of Z.W., a minor, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)   Civil Action No. 05-821 (SLR) |
| STANLEY W. TAYLOR, JR., individually; PAUL HOWARD, individually; NOREEN RENNARD, individually;  THOMAS L. CARROLL, individually; BETTY BURRIS, individually; DAVID PIERCE, individually; MICHAEL RECORDS, individually; and DAVID McDONALD, | )<br>)   JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 20, 2008, he electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following person, counsel of record for defendants:

Ralph K. Durstein, III
Erika Y. Tross, Esquire
Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801

                                                **PERRY & SENSOR**

                                         By:   /s/   Michael L. Sensor
                                                 Michael L. Sensor, Esquire
                                                 Delaware Bar ID No.  3541
                                                 One Customs House, Suite 560
                                                 P.O. Box 1568
                                                 Wilmington, DE 19899-1568
                                                 Telephone: (302) 655-4482

Dated: March 20, 2008                                  Attorney for Plaintiff